**KENYATTA K. STEWART, CORPORATION COUNSEL**
**CITY OF NEWARK-DEPARTMENT OF LAW**
**920 BROAD STREET, ROOM 316**
**NEWARK, NEW JERSEY 07102**
**Attorney for Plaintiff City of Newark**

**By:     Gary S. Lipshutz, Esq.**
**Assistant Corporation Counsel**
**NJ Bar Id# 001861995**
**Telephone: (973) 733-5945**
**Facsimile: (973) 733-5394**
**Email: lipshutzg@ci.newark.nj.us**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **CITY OF NEWARK,** | : |
| Plaintiff, | : Civ. No. |
| v. | : |
| **CITY OF NEW YORK et al.,** | : |
| Defendants. | : |

## BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINTS AND PRELIMINARY INJUNCTION

By:     Kenyatta K. Stewart, Corporation Counsel
        Gary S. Lipshutz, Assistant Corporation Counsel

On the Brief:
        Wilson Antoine, Assistant Corporation Counsel
        Azeem Chaudry, Assistant Corporation Counsel
        Dorian Smith, Assistant Corporation Counsel
        Hugh Thompson, Assistant Corporation Counsel

Dated: December 2, 2019

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS......................................................................................4

LEGAL ARGUMENT ............................................................................................5

AN ORDER TO SHOW CAUSE SHOULD ISSUE
FOR TEMPORARY RESTRAINTS AND AN ORDER
SHOULD ISSUE FOR A PRELIMINARY INJUNCTION ...................................................5

   A.  Newark has a reasonable probability of success on the merits ...........................6

      1.    The SOTA Program results in a public nuisance because
the defendants intentionally coerce individuals to leave
New York City into uninhabitable, sometimes illegal, housing,
and creates a disincentive to landlords to address the
complaints of SOTA recipients ...................................................................6

      2.    The SOTA Program violates the "dormant"
Commerce Clause by regulating and discriminating
against commerce wholly outside of New York City's
jurisdictional border ...................................................................................9

   B.  Newark will be irreparably harmed if an injunction is not issued........................ 12

   C.  Balance of the equities and of the harm to each party favors Newark................ 14

   D.  The public interest favors injunctive relief........................................................ 15

CONCLUSION ...................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Adams v. Freedom Forge Corp.</u>,
   204 F.3d 475 (3d Cir. 2000)................................................................ 12

<u>Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n</u>,
   545 U.S. 429 (2005)........................................................................ 10

<u>Associated Indus. of Mo. v. Lohman</u>,
   511 U.S. 641 (1994)........................................................................ 10

<u>Borough of Cresskill v. Borough of Dumont</u>,
   28 N.J. Super. 26 (Law Div. 1953)....................................................... 6

<u>Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist.</u>,
   16 F. Supp. 3d 294 (S.D.N.Y. 2014)..................................................... 6

<u>C & A Carbone, Inc. v. Town of Clarkstown, N.Y.</u>,
   511 U.S. 383 (1994)........................................................................ 10

<u>Campbell Soup Co. v. ConAgra, Inc.</u>,
   977 F.2d 86 (3d Cir. 1992)................................................................ 13

<u>Comptroller of Treasury of Md. v. Wynne</u>,
   135 S. Ct. 1787 (2015)..................................................................... 10

<u>Dep't of Revenue of Ky. v. Davis</u>,
   553 U.S. 328 (2008)........................................................................ 10

<u>Edwards v. California</u>,
   314 U.S. 160 (1941)............................................................. 11, 12, 15

<u>Ferring Pharm., Inc. v. Watson Pharm., Inc.</u>,
   765 F.3d 205 (3d Cir. 2014)............................................................... 5

<u>GJJM Enterprises, LLC. v. City of Atlantic City</u>,
   293 F.Supp. 3d 509 (D.N.J. 2017) ..................................................... 14

<u>Granholm v. Heald</u>,
   544 U.S. 460 (2005)........................................................................ 11

Hughes v. Oklahoma,
   441 U.S. 322 (1979)..........................................................................................10

In re Arthur Treacher's Franchisee Litig.,
   689 F.2d 1137 (3d Cir. 1982)..............................................................................5

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
   882 F.2d 797 (3d Cir. 1989)..............................................................................13

James v. Arms Tech., Inc.,
   359 N.J. Super. 291(App. Div. 2003) ..................................................................6

Korematsu v. United States,
   323 U.S. 214 (1944)............................................................................................4

Kos Pharm., Inc. v. Andrx Corp.,
   369 F.3d 700 (3d Cir. 2004)................................................................................5

McBurney v. Young,
   133 S. Ct. 1709 (2013)......................................................................................10

New Energy Co. of Ind. v. Limbach,
   486 U.S. 269 (1988)..........................................................................................10

NutraSweet Co. v. Vit–Mar Enters., Inc.,
   176 F.3d 151 (3d Cir. 1999)................................................................................5

Opticians Ass'n of Am. v. Indep. Opticians of Am.,
   920 F.2d 187 (3d Cir. 1990)................................................................................5

Pike v. Bruce Church, Inc.,
   397 U.S. 137 (1970)..........................................................................................11

South Dakota v. Wayfair, Inc.,
   138 S. Ct. 2080 (2018)................................................................................10, 11

Southern Pacific Co. v. Arizona ex rel. Sullivan,
   325 U.S. 761 (1945)..........................................................................................10

Trump v. Hawaii,
   138 S. Ct. 2392 (2018)........................................................................................4

Weinberger v. Romero-Barcelo,
   456 U.S. 305 (1982)..........................................................................................15

<u>Winter v. Nat. Res. Def. Council, Inc.</u>,
  555 U.S. 7 (2008) ............................................................................... 5, 14, 15

**Statutes**

McKinney's Social Services Law § 148 ..................................................... 11, 15

U.S. Const. Art. I, § 8, cl. 3 ......................................................................... 9

## **PRELIMINARY STATEMENT**

The City of Newark ("Plaintiff" or "Newark" or the "City") here seeks an Order to Show Cause granting temporary restraints and an Order granting a preliminary injunction, restraining and enjoining defendants New York City ("NYC"), Mayor Bill de Blasio, and Commissioner Steven Banks (collectively "Defendants"), from coercively relocating any additional persons or families to Newark through their Special One-Time Assistance Program ("SOTA"), and other relief.   Newark brings this action pursuant to its Constitutional and common law authority to redress Defendants' continuing public nuisance and violation of the Dormant Commerce Clause, in irresponsibly coercing unsuspecting families and individuals into moving into uninhabitable buildings with no support network or legal protections.

To be clear, this application is not an indictment of homeless people.  Newark does not blame *the victims* of the actions of Defendants.  Newark is a welcoming community that also recognizes the difficulties associated with homelessness.  Newark is willing to work with all local and state officials, whether such officials are from New Jersey or New York, to seek intelligent, well-thought-out, pragmatic solutions to the problems facing indigent persons.   Newark further acknowledges that the problems associated with homelessness affect not only the New York City metropolitan region, but are of nationwide concern.

Nor does this application seek to repudiate this nation's time-honored reverence of the right of persons to freely travel and migrate from community to community, and from state to state, of their own volition.

Rather, this case concerns an unlawful program of "coerced" migration.   This

application challenges Defendants' ill-conceived, surreptitious efforts to shift the burdens associated with the homeless to other communities in this nation, by forcing SOTA recipients to accept the proverbial "offer they can't refuse."[1]

Defendants dangle one-year of pre-paid rent in front of a vulnerable population who, by definition, rely entirely upon the assistance of government for shelter and medical insurance. Defendants couple their housing "offer" with thinly-veiled threats of pressure, in the form of "act now or you may lose this opportunity," or with implications that such individuals have "overstayed" their welcome in the defendants' system. What choice do these individuals really have when presented with this "offer"?

This is pure coercion, not freedom of travel or migration. And while we cannot speak on behalf of the rest of this nation,[2] Newark asks this Court to put a stop to Defendants' actions, now.

---

[1]    In The Godfather, Vito Corleone remarks that he will make uncooperative studio head Jack Woltz, "An offer he can't refuse." This initially appears innocent enough, as the viewer may believe this refers to a deal Woltz simply can't pass up, something so good that Woltz will just have to say yes. Within a few scenes, the viewer learns the truth, that the "offer" was no offer at all, it was really a command, "Do what we say or else." Woltz (and the viewer) learn the hard way when, after Woltz refuses the "offer," he wakes up with the head of his prized horse in his bed.

[2]    Apparently, Newark is not the only New Jersey community affected by the defendants. Kamilah and Nicholas Sierra were relocated by the SOTA program to East Orange, New Jersey. After they moved in, paint started peeling off the walls and polyurethane flaked off the floors. There was a leak in the kitchen and mice in the closet. The couple's baby fell through an opening in the porch railing. The apartment had never passed a local inspection, but there was little the Sierra's could do because their yearly rent had been paid up front by NYC and the landlord refused to fix the problems. A year later, the family was back in a shelter. See, Karen Yi, NYC sends homeless to live in illegal rentals in N.J. One town is trying to stop it (December 1, 2019), available at https://www.nj.com/essex/2019/12/nyc-sends-homeless-to-live-in-illegal-rentals-in-nj-one-town-is-trying-to-stop-it.html.

Defendants have conceived and implemented a program that coerces a vulnerable group into uninhabitable, and sometimes illegal, housing.  Defendants secretly transport and move SOTA recipients to the City of Newark and other communities.  The SOTA program also creates a perverse disincentive for local landlords.  It matters not to Defendants if the housing is actually habitable, or even legal.  What matters to Defendants is that once the full-year rent check is cashed, the SOTA recipients are no longer their concern.  Foolishly, Defendants give the rent monies to the landlords, upfront, with no real strings attached.  How do we know there are no repercussions to the landlord? Because Newark has learned that when SOTA recipients complain directly to *Defendants*, those complaints are wholly ignored.  And, if *Defendants* ignore the complaints of the SOTA recipients, what jeopardy could *the landlords* possibly face for also ignoring their own tenants?  The result is uninhabitable housing and a repeat cycle of homelessness.

Newark believes more than one-thousand families have been placed in Newark, but Newark does not know the exact number because Defendants have refused to tell Newark who they have placed in our community, or where they are.  The only reason that Newark knows that this "coerced migration" occurrs is because the SOTA recipients - the true victims of Defendants' schemes who were reluctant to move in the first place, and who suffer or suffered in horrible conditions, and who are abandoned by the defendants - have courageously come forward to complain directly to Newark.   In Certifications attached to the Verified Complaint, Newark has documented, first-hand, the deplorable conditions these victims have experienced, from illegal housing to uninhabitable housing, with no heat, failed electricity and plumbing, and vermin infestation.  Undoubtedly, there would be more first-hand accounts if Newark knew the identities of the other coerced

SOTA recipients, who, we surmise, are afraid of coming forward on their own.

This Country has a lamentable history with coerced and forced migration.  It took more than sixty-eight years for the Supreme Court to retreat from the "sordid legacy" of Korematsu v. United States, 323 U.S. 214 (1944).  In 2018, in Trump v. Hawaii, 138 S. Ct. 2392, 2423 (2018), Chief Justice Roberts observed:

> Korematsu was gravely wrong the day it was decided, has been overruled in the court of history, and - to be clear - has no place in law under the Constitution.  (citation omitted).

Of course, we are not at all implying that the situation presented here is the equivalent, either legally or morally, to Korematsu.  We refer to that case as hyperbole to illustrate that, in time, the actions of the Defendants here will similarly receive the due criticism which Defendants deserve.

## **STATEMENT OF FACTS**

In lieu of a statement of facts, Plaintiff incorporates the facts set forth in the Verified Complaint and the Certifications attached thereto as if they had been set forth herein in their entirety.

**LEGAL ARGUMENT**

**AN ORDER TO SHOW CAUSE SHOULD ISSUE FOR TEMPORARY RESTRAINTS AND AN ORDER SHOULD ISSUE FOR A PRELIMINARY INJUNCTION**

The standard for preliminary and temporary injunctive relief is well established. A plaintiff seeking preliminary relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Ferring Pharm., Inc. v. Watson Pharm., Inc., 765 F.3d 205, 210 (3d Cir. 2014) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

The movant (here, Newark) bears the burden of showing that these four factors weigh in favor of granting the injunction. See Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). The "failure to establish any element . . . renders a preliminary injunction inappropriate." NutraSweet Co. v. Vit–Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999); see also In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction.").

Notwithstanding the foregoing, "'[o]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties.'" Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted). Newark's request for temporary restraints and a preliminary injunction seek to preserve the status quo by preventing any further displacement of disenfranchised individuals.

A. **Newark has a reasonable probability of success on the merits**

1. **The SOTA Program results in a public nuisance because the defendants intentionally coerce individuals to leave New York City into uninhabitable, sometimes illegal, housing, and creates a disincentive to landlords to address the complaints of SOTA recipients**

New Jersey law recognizes both public and private nuisances.   Borough of Cresskill v. Borough of Dumont, 28 N.J. Super. 26, 38 (Law Div. 1953), aff'd, 15 N.J. 238 (1954); Restatement (Second) of Torts ("Restatement") §§ 821A, 821B, 821D (1979).

In New Jersey, a public nuisance is defined as follows:

(1) [A]n unreasonable interference with a right common to the general public.

(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

> (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or,

> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

> (c) whether the conduct is of a continuing nature or has produced a permanent or longlasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

See Restatement, § 821B.

"Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land." Id. at comment h.  A public nuisance may exist when the complained of activity constitutes "a continuing course of conduct that is calculated to result in physical harm or economic loss to so many persons as to become a matter of serious concern."   Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist., 16 F. Supp. 3d 294, 336 (S.D.N.Y. 2014) (quoting James v. Arms Tech., Inc., 359 N.J. Super. 291, 329–30(App. Div. 2003).  Defendants' actions through the SOTA

Program have created, and will continue to create, a public nuisance in the form of increased homelessness and dilapidation harmful not only to SOTA recipients residing in Newark, but to all Newark citizens and businesses.

Defendants created and continue to perpetuate conditions that increase the likelihood that SOTA recipients will not only end up homeless again, but will be even more vulnerable than before they entered the program. Defendants have coerced vulnerable citizens to migrate to Newark often with no family or stable relationships within the area. SOTA places SOTA recipients in housing that they are ill-equipped to afford after the expiration of the year-long program, and Defendants provide no assistance with either planning or preparing for the inevitable increased financial burden that SOTA recipients will encounter.

Additionally, by coercing citizens into poorly-vetted, illegal and uninhabitable housing, Defendants created perverse disincentives for landlords to maintain inadequate housing detrimental to both the SOTA recipients, any possible future tenants and the overall housing market in the area.  Landlords are incentivized to provide inadequate housing – which acts to push SOTA recipients out at the end of the year – which further increases the likelihood that these unfortunate victims will end up homeless in a city such as Newark where they have no support.  Landlords also stand to gain financially by constructively evicting these tenants in order to re-let the spaces.

Defendants also insist that residents quickly sign leases with unscrupulous landlords while providing little to no opportunity to properly vet the inadequate living spaces. These poorly maintained spaces not only affect SOTA recipients finding

residence in Newark, but affects any potential renters in the future and degrades the overall housing market in Newark.

Moreover, SOTA violates Newark's municipal ordinances.  A recently enacted ordinance ensures that conditions are safe before tenants move in.  Under the new measure, landlords must obtain a certificate of code compliance from city inspectors every time they rent to a new tenant.  Additionally, providers of a rental vouchers or subsidies must conduct an inspection of the premises on behalf of the voucher/subsidy recipient.  The new Ordinance also forbids the pre-payment of one-year rent payments because of the perverse disincentive to the landlord to remediate any illegal/uninhabitable housing.

Defendants do not coordinate with Newark when they coerce SOTA recipients to move to Newark; nor do Defendants properly inspect the conditions of the housing. Defendants' reckless disregard for such conditions create an increased burden on Newark to fix or address the conditions otherwise encouraged by the Defendants.

Applying the Restatement analysis, Newark's allegations demonstrate an unreasonable interference by Defendants with a right common to the general public in the City of Newark.  The public nuisance here is the Defendants' coercive conduct used to force its citizens into poorly-vetted, illegal and uninhabitable housing, coupled with the perverse disincentives stemming from the SOTA program, including up-front payment of all the rent to the landlord, which actually increases the likelihood and actuality of homelessness and extreme poverty suffered by SOTA recipients.

Finally, Defendants patterned the SOTA Program off of the failed "Advantage," or "Work Advantage" program, which was a rental subsidy program that provided up to two

years of rent support.  The Advantage program was suspended in April 2011, apparently because NYC was aware that most families could not attain self-sufficiency after two years.

Unlike the Advantage program, the SOTA Program only provides one-year rental subsidy.  Therefore, the Defendants, with knowledge that a two-year rental subsidy program was ineffective, purposefully implemented a *shorter* rental subsidy program, without adequate inspections, without ensuring that the anticipated housing was legal or habitable, without any notification to the receiving public entity, and without any recourse for the coerced SOTA recipient to force the landlord to abate deficient housing (because the landlord receives all the money up front).  After receipt of full payment, landlords have no incentive to maintain the upkeep of the premises as there is no threat of non-payment or recourse for families.

This is by definition a public nuisance.  This is unreasonable conduct by the defendants, of a "continuing nature" with a "long-lasting effect," and the defendants knew or had reason to know the "significant effect" their conduct would have upon Newark and its inhabitants.

Newark has demonstrated a clear likelihood of success, on the merits, because of the public nuisance created by the Defendants' SOTA Program as presently implemented.

### 2. The SOTA Program violates the "dormant" Commerce Clause by regulating and discriminating against commerce wholly outside of New York City's jurisdictional border

The Commerce Clause gives Congress the power to regulate commerce among the states.  U.S. Const. Art. I, § 8, cl. 3.  The Commerce Clause speaks only of affirmative congressional power, so, when Congress exercises its power to regulate commerce by

enacting legislation, the legislation controls.  <u>Southern Pacific Co. v. Arizona ex rel.</u> <u>Sullivan</u>, 325 U.S. 761, 769 (1945).  In the absence of congressional action, the Supreme Court observed that "Congress has left it to the courts to formulate the rules" to preserve "the free flow of interstate commerce." <u>Id</u>. at 770.

The inverse corollary to the Commerce Clause is the "negative" or "dormant" Commerce Clause.  It "presumes a national market free from local legislation that discriminates in favor of local interests." <u>C & A Carbone, Inc. v. Town of Clarkstown, N.Y.</u>, 511 U.S. 383, 393 (1994).  In other words, the Commerce Clause, as interpreted, constitutes not only an affirmative authorization *for Congress* to regulate interstate commerce, but a corresponding *restraint* on the power of state and local governments to regulate such interstate commerce.  <u>Dep't of Revenue of Ky. v. Davis</u>, 553 U.S. 328, 337–38 (2008); <u>Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n</u>, 545 U.S. 429, 433 (2005).

The dormant Commerce Clause therefore exists to prevent states from enacting protectionist measures that benefit their residents at the expense of a national open market.  <u>See</u> <u>Comptroller of Treasury of Md. v. Wynne</u>, 135 S. Ct. 1787, 1794 (2015); <u>McBurney v. Young</u>, 133 S. Ct. 1709, 1719 (2013); <u>Dep't of Revenue of Ky. v. Davis</u>, 553 U.S. 328, 337-38 (2008); <u>Associated Indus. of Mo. v. Lohman</u>, 511 U.S. 641, 650 (1994); <u>New Energy Co. of Ind. v. Limbach</u>, 486 U.S. 269, 273-74 (1988); <u>Hughes v. Oklahoma</u>, 441 U.S. 322, 326 (1979).

Two principles govern the authority of a State to regulate interstate commerce: "[f]irst, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." <u>South Dakota v.</u>

Wayfair, Inc., 138 S. Ct. 2080, 2090-91 (2018).  The Supreme Court stated that laws "that discriminate against interstate commerce face 'a virtually per se rule of invalidity.'"  Id. at 2091 (quoting Granholm v. Heald, 544 U.S. 460, 470 (2005)).  However, "[s]tate laws that 'regulat[e] even-handedly to effectuate a legitimate local public interest ... will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'"  Id. (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).

Newark does not tread new ground in this application.  The Supreme Court previously applied the dormant Commerce Clause to invalidate state action that affected the interstate transportation of indigent persons.  In Edwards v. California, 314 U.S. 160 (1941), the Supreme Court addressed the constitutionality of a California statute prohibiting the transport of indigent persons *into* that state.  The Supreme Court struck down the statute as a violation of the dormant Commerce Clause, reasoning that "the transportation of persons is commerce," and that the California statute was an "unconstitutional barrier to [that] interstate commerce."  314 U.S. at 172–173.

In holding that the transportation of persons is "commerce," the Supreme Court noted that "[i]t is immaterial whether or not the transportation is commercial in character."  Id. at 172, n. 1.  The Constitution prohibits "attempts on the part of any single State to isolate itself from difficulties common to all of them by restraining the transportation of persons and property across its borders."  Id. at 173.[3]

---

[3]     Newark notes with irony that the State of New York has a statute, McKinney's Social Services Law § 148, which criminalizes "persons" who "send or bring, or cause to be sent or brought, any needy person into a public welfare district with the purpose of making him a charge on such public welfare district, or for the purpose of avoiding the responsibility of assistance or care in the public welfare district from which he is brought or sent."  That is exactly what the Defendants are doing in Newark, which action would, if done in the State of New York, be illegal.

There is no reason why the *isolationist tactics* proscribed by <u>Edwards</u> should not also *per se* invalidate the coerced transportation of indigent persons *out of a state*.  After all, <u>Edwards</u> explicitly recognized that "the transportation of indigent persons from State to State," is a subject that, "if regulated at all," is solely under the control of Congress, not the individual states. <u>Id.</u> at 176.  In so stating, the Supreme Court did not differentiate between the direction of such movement restrictions; it spoke only to the "transportation" of such persons, in general.  The lesson of <u>Edwards</u> is that it is up to Congress, not the individual states, to regulate such interstate "commerce."  Defendants have no more right to unlawfully coerce persons to move out of New York City than California had to stop persons from moving into that state.  The prohibition of the Dormant Commerce Clause works both ways.

The prohibition of the Domant Commerce Clause applies to SOTA.  As discussed in detail above, Defendants coerce indigent persons into moving into Newark to avoid providing them services in the long run; Defendants conduct superficial deficient inspections and pay a lump sum to slumlords on behalf of these indigent persons, thereby degrading the housing market in Newark and subjecting these indigent persons to dangerous living conditions; and Defendants refuse to provide any assistance to indigent persons or notice to Newark after having burdened interstate commerce for their own benefit.

**B.**   <u>**Newark will be irreparably harmed if an injunction is not issued**</u>

"The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages."  <u>Adams v. Freedom Forge Corp.</u>, 204 F.3d 475, 484-85 (3d Cir. 2000).  Mere economic harm is insufficient; rather, "the plaintiff must demonstrate

potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). The preliminary injunction must be the only way of protecting the plaintiff from harm." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992).

Newark is concerned about the living conditions of perhaps one thousand or more SOTA recipients.  From the small sample of SOTA recipients that Newark was able to identify, Newark has become aware of families, including those with infants, that are living in uninhabitable conditions.  This includes issues with lack of heat, electricity, excessive vermin, and dangerous living conditions.  When temperatures drop, families have to use dangerous space heaters to stay warm.  At times, temperatures have dropped so low that water freezes and pipes break.  Some of the SOTA recipients have attempted to address their unbearable living conditions by contacting Defendants.  Families were told that Defendants either cannot or will not help because they are residents of Newark now.  It is, apparently, no longer the Defendants' concern.  Having nowhere to turn and unable to hold the landlords accountable, families have contacted the Newark for help.

Money damages will not alleviate Newark's concerns.  Winter has come, and Newark has an interest in ensuring the welfare of its residents which is not purely economic in character.  Defendants' actions, if not stopped, will continue to cause harm to the public with the continued influx of SOTA Recipients into uninhabitable or illegal housing.

Moreover, for Newarkers, finding affordable housing is already a major concern and SOTA actually displaces others in need in our community, by encouraging landlords not to comply with applicable housing codes.  SOTA has a direct impact on Newark's

housing stock, as stated above.  A landlord has no incentive to keep his or her building up to code.  Housing violations cannot be penalized by the withholding of rent from a family who has to pay month-to-month.  Instead, the landlord can accept a family with a full year rent, up front, and who will take the property with real inspection.

The implementation of SOTA in Newark demands an equitable remedy, as no amount of money will be sufficient to compensate the lasting damage that will be done by SOTA.

## C.   Balance of the equities and of the harm to each party favors Newark

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims or injury and must consider the effect on each of the granting or withholding or the requested relief." Winter v. Natural Resources Council, Inc., 555 U.S. 7 (2008).  "At this stage, a court should also take into account the possibility of harm to other interested persons from the grant or denial of the injunction." GJJM Enterprises, LLC. v. City of Atlantic City, 293 F.Supp. 3d 509 (D.N.J. 2017).

Here, there are no reasonable and legitimate hardships that Defendants may claim.  As mentioned above, the failure of SOTA has amounted to harm to SOTA recipients living outside of New York City, and inside the City of Newark.  The SOTA recipients, described in the Verified Complaint are living in uninhabitable conditions, are evicted after the one-year tenancy expires, and cannot have living conditions remedied because the landlords have no incentives as one-year rental is paid up front. Furthermore, Newark is harmed because it is unable to rectify living conditions for SOTA recipients because Defendants have thwarted Newark's attempts to ascertain the identities of the families being sent to the City of Newark.

To the extent that Defendants argue that SOTA is necessary for them reduce their population of homeless individuals, this interest is not a valid one.  See Edwards, 314 U.S. at 173 (noting that the Constitution prohibits "attempts on the part of any single State to isolate itself from difficulties common to all of them by restraining the transportation of persons and property across its borders.").  Moreover, such actions are statutorily prohibited in the State of New York, as well.  McKinney's Social Services Law § 148.

To the extent that Defendants argue that they have some undefined right to accommodate the desires of individuals to travel to other communities, any such statement is belied by the complaints of the SOTA-recipients identified by Newark, and by other communities.

### D.   The public interest favors injunctive relief

It is in the public interest to prevent SOTA from continuing to be administered in a way that harms its recipients and the other residents of Newark.  When considering an application for injunctive relief, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).  Newark is currently unable to quantify the full harm being caused by Defendants because so many recipients have been moved into Newark without Newark's knowledge or coordination.

But even the harm identified thus far, necessitates an injunction to halt additional harm to potential SOTA recipients and to Newark.  The program is not currently addressing an imminent threat or unique emergency that the Defendants would be unable to address through the normal course of administration.  Indeed, the SOTA promotional

materials clearly state that the purpose of the program is simply to minimize NYC's indigent population.  Because the manner in which Defendants have treated their homeless population, as stated at length above, violates statutory and constitutional law, the public interest actually favors an injunction.  In fact elected officials in the State of New York have petitioned the State's AG to investigate and halt Defendants' practices. https://www.nysenate.gov/sites/default/files/article/attachment/3.9.18_akshar_letter_to_ schneiderman_on_sota.pdf (Requesting that Attorney General "investigate the legality of this morally bankrupt practice, as it appears to violate both the letter and spirit of § 148 of the NYS Social Services Law").

Stated simply, the public interest favors injunctive relief because this application simply seeks to prevent further harm from being caused.

## **CONCLUSION**

For the above reasons, Plaintiff City of Newark respectfully requests that the Court grant the injunctive relief sought.

**CITY OF NEWARK**
**DEPARTMENT OF LAW**
*Attorney for Plaintiff*

By:  *s/Kenyatta K. Stewart*
      Kenyatta K. Stewart, Esq.
      Corporation Counsel

By:  *s/Gary S. Lipshutz*
      Gary S. Lipshutz, Esq.
      Assistant Corporation Counsel

Dated: December 2, 2019