JAMES E. JOHNSON
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007

By:    Brian T. Horan
       Doris F. Bernhardt (admitted *pro hac vice*)
       Assistants Corporation Counsel
       212.356.2297/2296
       bhoran@law.nyc.gov
       dbernhar@law.nyc.gov

*Attorneys for Defendants/Counterclaimant*


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

----------------------------------------------------------------- x

CITY OF NEWARK,

                          Plaintiff,

vs.

CITY OF NEW YORK; MAYOR BILL DE BLASIO,
in his official capacity; COMMISSIONER STEVEN
BANKS, in his official capacity,

                          Defendants.

----------------------------------------------------------------- x

**Document Filed Electronically**

Case No. 19-cv-20931-MCA-LDW


## MEMORANDUM OF LAW IN OPPOSITION
## TO CITY OF JERSEY CITY'S MOTION TO INTERVENE

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ..................................................................................................................... 3

    A.  Newark's Claims and NYC's Counterclaims ................................................ 3

    B.  Jersey City's Ostensible Interest ................................................................. 4

    C.  Origin of SOTA and Improvements to Program ........................................ 5

ARGUMENT ........................................................................................................... 8

I.   JERSEY CITY DOES NOT HAVE STANDING TO INTERVENE AS OF RIGHT ........... 8

    A.  Jersey City Has Not Suffered Any Harm ................................................... 8

    B.  Jersey City Does Not Demonstrate That Any Harm Is Fairly Traceable to SOTA ............. 9

    C.  Jersey City Does Not Demonstrate That Any Harm Can Be Redressed in This Case ...... 10

II.  THE MOTION TO INTERVENE SHOULD BE DENIED BECAUSE  JERSEY  CITY
      FAILS TO MEET THE REQUIREMENTS OF RULE 24(a) ............................................. 11

    A.  Jersey City Has No Legally Protectable Interest in This Case ......................... 12

    B.  Even if Jersey City Did or Could State a Sufficient Interest, It Fails to Demonstrate That
       Any Such Interest Will Be Impaired by the Lawsuit ....................................... 15

    C.  Even if Jersey City Had an Interest, Newark Adequately Represents That Interest in This
       Case ............................................................................................................. 16

III.  JERSEY CITY'S CLAIMS ARE MOOT .......................................................... 17

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benjamin v. Dep't of Pub. Welfare of Pa.*,
    432 F. App'x 94 (3d Cir. 2011) .............................................................................16

*Brody v. Spang*,
    957 F.2d 1108 (3d Cir. 1992)...........................................................................12, 16

*Camden Cty. Bd. of Chosen Freeholders v. Beretta*,
    273 F.3d 536 (3d Cir. 2001)...................................................................................14

*Camden Police Cases v. State Nat'l Ins. Co. (In re Camden Police Cases)*,
    2012 U.S. Dist. LEXIS 136302 (D.N.J. Sept. 24, 2012) ......................................17

*Cioletti v. Continental Airlines, Inc.*,
    2011 U.S. Dist. LEXIS 81135 (D.N.J. July 25, 2011)..........................................14

*Comptroller of the Treasury v. Wynne*,
    135 S. Ct. 1787 (2015)...........................................................................................13

*Donaldson v. United States*,
    400 U.S. 517 (1971)...............................................................................................12

*Finkelman v. NFL*,
    877 F.3d 504 (3d Cir. 2017).........................................................................8, 9, 10

*Harris v. Pernsley*,
    820 F.2d 592 (3d Cir. 1987)............................................................................12, 15

*Hoots v. Pennsylvania*,
    672 F.2d 1133 (3d Cir. 1982).................................................................................16

*Howell v. Waste Disposal*,
    207 N.J. Super. 80 (App. Div. 1985) ......................................................................9

*Hudson v. Robinson*,
    678 F.2d 462 (3d Cir. 1982)...................................................................................17

*Kleissler v. United States Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998)............................................................................12, 16

*In re Lead Paint Litigation*,
    191 N.J. 405 (2005) ...............................................................................................14

*McBurney v. Young,*
  569 U.S. 221 (2013) ...................................................................................13

*N.J. Dep't of Envtl. Protection v. Exxon Corp.,*
  151 N.J. Super. 464 (Ch. Div. 1977) .........................................................14

*Nuesse v. Camp,*
  385 F.2d 694 (D.C. Cir. 1967) ...................................................................12

*Philadelphia v. New Jersey,*
  437 U.S. 617 (1978) ...................................................................................13

*Reeves, Inc. v. Stake,*
  447 U.S. 429 (1980) ...................................................................................13

*Seneca Res. Corp. v. Twp. of Highland,*
  863 F.3d 245 (3d Cir. 2017)...........................................................12, 16, 17

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) .....................................................................................10

*Town of Chester v. Laroe Estates, Inc.,*
  137 S. Ct. 1645 (2017) .................................................................................8

*United States v. Alcan Aluminum,*
  25 F.3d 1174 (3d Cir. 1994)................................................................12, 16

*United States v. W. T. Grant Company,*
  345 U.S. 629 (1953) ...................................................................................17

*West Lynn Creamery, Inc. v. Healy,* 512 U.S. 186 (1994)...........................................13

**Statutes**

City of Jersey City Property Maintenance Code §§ 254-16 to 254-19.............................10, 14, 15

Newark Municipal Code §§ 18:6-10.1 to 10.4 ....................................................................3

**Other Authorities**

Fed. R. Civ. P. Rule 24 ...............................................................................11, 12

6 Moore's Federal Practice – Civil § 24.03 (2019) ...............................................12, 17

## PRELIMINARY STATEMENT

Seeking to intervene as of right in this litigation between the City of Newark ("Newark") and New York City ("NYC"), Jersey City submits a proposed complaint that attacks the Special One-Time Assistance ("SOTA") program that benefits homeless families and individuals.  The proposed complaint and other motion papers make clear that Jersey City has no right to participate in this lawsuit.  Jersey City has no injury and otherwise no standing; lacks any legally cognizable theory of liability or other interest in the outcome of the case sufficient to warrant intervention; and asserts claims that are moot, based as they are on completely outdated information.  Jersey City bears the burden of showing its entitlement to intervention here—and has utterly failed to do so.

The proposed complaint does not contain any allegations about SOTA specific to Jersey City, much less allegations that support Jersey City's intervention.  Instead, the proposed complaint cribs from Newark's pleading and relies heavily on the report issued by the NYC Department of Investigation ("DOI Report"). The DOI Report, however, says nothing about Jersey City.  Indeed, DOI's investigation concerned only a *single* bad landlord with properties in just *two* New Jersey municipalities, neither of which was Jersey City.  According to its complaint, Jersey City is not aware of *any* SOTA recipients in its jurisdiction who have encountered issues with their housing.

Moreover, even if Jersey City alleged facts specific to itself, it would not meet the standard for intervention.  Jersey City lacks standing—a jurisdictional requisite—because it has not demonstrated any injury, much less any injury traceable to SOTA that could be redressed by the remedies it seeks.  *See* Declaration of C. Gandulla dated Dec. 24, 2019 (ECF Doc. No. 28-6).

Even if Jersey City had standing, it would not be entitled to intervene because the patent meritlessness of its claims leaves it bereft of any sufficient interest in this case.  Its first

claim, under the dormant Commerce Clause, badly fails to fit a government assistance program, under which NYC pays money *into* interstate commerce, within a doctrine prohibiting state regulations that *impair* interstate commerce.  Jersey City's second claim, for common law public nuisance, is equally meritless because, while Jersey City alleges (without any basis) that SOTA puts a very small number of Jersey City residents—176 households at most—at risk of living in unsuitable apartments, it makes no plausible allegation that SOTA is the cause of the supposed harm.  Proposed Compl. ¶¶ 59, 62.  Nor is there any showing whatsoever that SOTA unreasonably interferes with any right of the general public that Jersey City has the authority to vindicate.

What is more, Jersey City's motion is mooted by changed circumstances. Beginning in February 2020, SOTA assistance is to be provided through an escrow system under which landlords are paid on a monthly basis, rather than by one up-front payment for the year, with tenants empowered to halt the monthly payments in appropriate circumstances.  Decl. of Sheila Corbin dated Dec. 13, 2019, ¶ 47 (ECF Doc. No. 23-1); Supp. Decl. of Sheila Corbin dated Jan. 6, 2020, ¶ 2 (ECF Doc. No. 35-1).  This change renders moot Jersey City's fanciful theory that the prepayment of one year's rent constitutes a public nuisance.  *See* Proposed Compl. ¶¶ 59-60.

NYC opposes Jersey City's intervention not only because Jersey City fails to carry its burden, but also because allowing Jersey City to jump on the bandwagon will complicate and likely delay resolution of the important dispute between Newark and NYC.  This dispute involves both NYC's challenge to unlawful provisions of the Ordinance enacted by Newark in a misguided attempt to prevent low income households with income from moving to that city using SOTA, and Newark's challenge seeking an injunction against the operation of

SOTA in Newark.  Each side's motion for a preliminary injunction is fully briefed.  Jersey City's intervention would complicate the ongoing litigation of this case by inserting a third party into an already knotty dispute.  On the other hand, if the intervention motion is denied as it should be, Jersey City will presumably have the option of filing a separate case in this Court or another forum, without these adverse consequences for the existing litigation.  Because it does not have standing or a sufficient interest in this case, and because its claims are stale, Jersey City's motion to intervene should be denied

## FACTS

### A.      Newark's Claims and NYC's Counterclaims

This case involves a dispute between Newark and NYC concerning SOTA and Newark's response to it.  In November 2019, approximately two years after NYC began providing SOTA grants to enable households to move from shelter to permanent housing, Newark enacted an Ordinance explicitly intended to prevent "needy" people from moving to Newark, and designed to prevent SOTA grantees in particular from renting apartments in Newark.  ECF Doc. No. 14 (Counterclaim ¶ 33); Newark Municipal Code §§ 18:6-10.1 to 10.4. By the Counterclaim it filed in this action, NYC is seeking to invalidate the Ordinance.  ECF Doc. No. 14.  As asserted in the Counterclaim, the Ordinance is invalid because it exceeds Newark's police power and other authority under state law; is preempted by the New Jersey Law Against Discrimination; violates the right to travel under the U.S. Constitution; and imposes penalties that abridge the Excessive Fines Clause of the U.S. Constitution.  *Id.*  In connection with its Counterclaim, NYC moved for a preliminary injunction to allow eligible clients, including those already linked to apartments in Newark, to move into permanent housing.  ECF Doc. No. 15.  Newark responded to NYC's motion for a preliminary injunction and moved to

dismiss the NYC Counterclaim, ECF Doc. No. 22.  NYC opposed the motion to dismiss, ECF Doc. No. 37, and Newark replied, ECF Doc. No. 40.

On December 2, 2019, shortly after enacting the Ordinance, Newark filed its complaint in this case seeking an injunction to prevent the use of SOTA grants in Newark, together with other equitable relief.  ECF Doc. No. 1 (Complaint).  Newark alleges that SOTA violates the dormant Commerce Clause and constitutes a public nuisance.  *Id.*  Newark relies in part on allegations that four households that received SOTA grants lived in Newark apartments with substandard conditions.  *Id.* (Complaint ¶¶ 22, 25, 40, 93, 94).  Newark's complaint does not mention Jersey City.  *See id.*  Newark sought a temporary restraining order and preliminary injunction to enjoin NYC from providing SOTA grants to households moving to Newark.  *Id.*  On December 20, 2019, after Newark withdrew its application for a TRO, NYC filed papers in opposition to Newark's preliminary injunction motion.  ECF Doc. Nos. 23, 24, 35.  All of the motions filed by Newark and NYC are now fully briefed.

**B.     Jersey City's Ostensible Interest**

On December 26, 2019, Jersey City filed its motion to intervene and, on January 7, 2020, supplemented its motion by filing a proposed complaint.  The proposed complaint purports to set forth two claims:  first, that SOTA violates the dormant Commerce Clause, and second, that SOTA creates a public nuisance.

According to the proposed complaint, in the two-year period from September 2017 to August 2019, 176 households who received SOTA rental assistance moved to Jersey City.  Proposed Compl. ¶ 41.  In contrast to Newark, Jersey City does not allege any specific facts concerning any of these households.  Jersey City alleges that "several SOTA recipients" have been placed in "illegal or uninhabitable properties in Jersey City," but the basis for that

allegation is Jersey City's assumption that landlords in Jersey City engaged in practices that were "[i]n line with" the conduct of the lone landlord who was the subject of the DOI investigation. *Id.* ¶ 44.  The proposed complaint makes clear that Jersey City has no actual evidence or other non-speculative basis for its allegations.  *See id.* ¶ 46 (speculating about "any problems that arise from the shortcomings of the SOTA program").  Indeed, Jersey City asserts that it "has no way to track the exten[t] of the actual health and safety hazards" allegedly faced by these households. *Id.* ¶ 63.

In seeking to intervene in this case, Jersey City doubles down on its unfounded speculation.  Jersey City asserts that SOTA recipients were left "at the mercy of *potentially* dishonest landlords" and were "at *risk* of being mistreated" by any such landlords, but it does not identify any such landlords or instances of "mistreat[ment]."  Jersey City Br. at 1.  Jersey City describes the harm to it as "any public nuisance that was caused" by SOTA, but points to no specific allegations, much less facts, tending to show that any such "public nuisance" has actually arisen.  *Id.* at 2.

Moreover, Jersey City admits that the 176 households receiving SOTA at some point over the two-year period covered by Jersey City's allegations moved to a city whose population is nearly 300,000.  *Id.* at 13.  The relatively tiny number of households who have moved to Jersey City using SOTA makes Jersey City's allegation that the program has caused a "public nuisance" not only speculative, but incredible.

## C.   Origin of SOTA and Improvements to Program

As alleged in Jersey City's proposed complaint, since August 2017, NYC has administered the SOTA program, an initiative to help certain eligible families and individuals who reside in homeless shelters achieve permanent housing stability by providing one year's

rent.  Proposed Compl. ¶ 9.  To be eligible for this voluntary program, households must have

been in shelter for more than 90 days and members of the household must be gainfully

employed, disabled and on Social Security Disability, retired and on Social Security Income or

receiving a pension, or receiving other recurring income.  *Id.* ¶¶ 10-11.  Households may use

SOTA for an apartment in locations of their choosing in New York City or in any of the fifty

states, Washington D.C., or Puerto Rico.  *Id.* ¶ 9.  The cost of the apartment cannot exceed 50%

of the household's income.  *Id.* ¶ 11.

Jersey City further alleges that once a suitable apartment for an eligible individual

or household is identified, NYC conducts an apartment review for housing located in New York

City as well as its metropolitan area, including Hudson County, New Jersey, where Jersey City is

located.  *Id.* ¶ 16.  The potential SOTA recipient must approve any apartment.  *Id.* ¶ 23.  The

broker and landlord must submit extensive documentation including a broker form, landlord

request letter, and SOTA landlord agreement.  *Id.* ¶ 19.  According to the proposed complaint,

once an apartment was approved, NYC would pay one year's rent up front to the landlord.  *Id.*

¶ 24.

Jersey City's proposed complaint cites to and incorporates the December 5, 2019

report issued by the Department of Investigation.  *Id.* ¶¶ 28-36 & n.2.  A copy of the report was

previously filed in this case.  *See* ECF Doc. No. 22-6 (DOI Report).  As stated in the report,

DOI's investigation began as a result of a referral from the NYC Human Resources

Administration (HRA)—encompassed within the NYC Department of Social Services (DSS)—

concerning a single landlord who owned apartment buildings in Newark and East Orange.  *Id.* at

2, 7-8.  Jersey City is not mentioned in the report.  *See id.*

DOI issued 11 recommendations for reform, all of which HRA/DSS accepted, as explained in the report.  *Id.* at 11-15.  For example, DSS has substantially amended the language in the broker forms and SOTA landlord agreements, in accordance with DOI's recommendations.  DOI Report at 11-12.  DSS also introduced numerous safeguards to improve the apartment review process and ensure that SOTA recipients move into safe housing.  *Id.* at 13-14.  Among other things, if the initial review reveals issues—such as the dwelling being a cellar or attic apartment—the apartment is flagged for secondary review and cannot be approved until a second on-site review is conducted by a DSS staff person with professional expertise in inspections.  *Id.* at 14.

Furthermore, as the DOI Report explains, HRA is in the process of "developing a pilot to stagger SOTA payments to landlords."  *Id.* at 15.  As explained in declarations previously filed in this case, beginning in February 2020, rent is to be paid to landlords on a monthly basis using an escrow system, which will include a mechanism to allow SOTA recipients to halt the payments in appropriate circumstances.  Decl. of Sheila Corbin dated Dec. 13, 2019, ¶ 47 (ECF Doc. Nos. 15-4 and 23-1); Supp. Decl. of Sheila Corbin dated Jan. 6, 2020, ¶ 2 (ECF Doc. No. 35-1).  This change in particular will eliminate the "disincentive to landlords to maintain their housing up to appropriate legal standards" as alleged by Jersey City.  Jersey City Br. at 2.[1]

---

[1] Particularly in light of such changes in the program, NYC denies as incorrect or outdated a number of the factual allegations concerning SOTA set forth in Jersey City's complaint.  In particular, Jersey City's allegation that rent is paid in a lump sum at the beginning of the lease term, Proposed Compl. ¶ 24, does not reflect the changeover to the escrow system through which rents will instead be paid on a monthly basis.

## ARGUMENT

## I.      JERSEY CITY DOES NOT HAVE STANDING TO INTERVENE AS OF RIGHT

Jersey City's motion to intervene should be denied because Jersey City does not have Article III standing under the U.S. Constitution.  The three requirements of Article III standing—injury, causation, and redressability— must be independently established where the intervenor "seeks additional relief beyond that which the plaintiff requests."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right.").  Here, Jersey City seeks relief specific to itself:  an injunction against the SOTA program in Jersey City until Jersey City "is availed of the names and locations where the SOTA recipients reside in Jersey City," together with other injunctive relief regarding the implementation of SOTA in Jersey City.  Accordingly, to intervene here, Jersey City must establish independent standing—which it cannot do.

### A.      Jersey City Has Not Suffered Any Harm

Jersey City lacks standing because it does not and cannot allege any harm or injury under its dormant Commerce Clause and public nuisances causes of action.  *Finkelman v. NFL*, 877 F.3d 504, 510 (3d Cir. 2017).  Jersey City does not allege that it suffers any harm or injury as a result of SOTA.  Nowhere in the proposed complaint does Jersey City allege any financial injury, operational burden, or other type of harm.  Nor would such an injury be credible: Jersey City alleges that a grand total of 176 households, a tiny fraction of Jersey City's population, have moved into the city with SOTA.  Jersey City also fails to cite any facts as to SOTA's administration or effect in Jersey City specifically.  Virtually all of the facts alleged in its proposed complaint are based upon the DOI Report on SOTA's operations in Newark, or

other documents previously filed by Newark or NYC in the instant litigation.  And from the face

of the proposed complaint, it is clear that none of the factual allegations arise out of Jersey City's

lived experience with SOTA.  Jersey City does not allege injury and accordingly, it lacks

standing and its motion to intervene should be.[2]

Jersey City asserts several conclusory allegations of harm to its residents and to

SOTA recipients.  *See* Proposed Compl. ¶¶ 42-48, 51, 59-62.  But, harm to Jersey City residents

or SOTA recipients is not enough to confer standing on Jersey City, injury to the city itself is

required.  *See, e.g.,Howell v. Waste Disposal*, 207 N.J. Super. 80, 99 (App. Div. 1985)

(dismissing township's public nuisance claim where its interest was "an indirect one on behalf of

the Township's citizenry").  Moreover, even with respect to the alleged harm to individuals,

Jersey City provides only conclusory statements, without any Jersey City-specific facts to

support them.

### B.  Jersey City Does Not Demonstrate That Any Harm Is Fairly Traceable to SOTA

Jersey City also fails to show that any alleged injury is "fairly traceable to the

challenged action" of NYC, and "not the result of independent action of some third party not

before the court."  *Finkelman*, 877 F.3d at 510.  To the extent Jersey City is seeking to hold NYC

responsible, through its nuisance claim, for substandard housing in Jersey City, this supposed

injury is not fairly traceable to NYC.  Indeed, Jersey City essentially concedes this point,

alleging merely that NYC "incentivized" and "made possible," not caused or created, poor

---

[2] Jersey City asserts that it does not know the names and addresses of SOTA recipients, *id.*
¶ 8-13—at most, 176 households—but this is not a legally cognizable injury, because Jersey City
has no right to this information.  Jersey City also suggests that its asserted lack of information
somehow impairs its ability to "provide its residents with decent, affordable housing, suitable
living environments and public spaces, public services and expanded economic opportunities,"
*id.* ¶ 13, but this is both speculative and nonsensical.  Jersey City has failed to identify any lack
of affordable, decent housing in Jersey City, or lack of access to services whatsoever.

behavior by landlords.  Proposed Compl. ¶ 60.  To be sure, NYC denies these allegations, but in

any event—as Jersey City is well aware—housing conditions in Jersey City are the province of

local property owners and Jersey City itself, which already has in place a system of code

enforcement to hold landlords accountable for code violations.  *See* Jersey City Property

Maintenance Code §§ 254-16 to -19.  Similarly, the idea that NYC somehow caused Jersey

City's failure to conduct outreach to its residents is absurd.  Proposed Compl. ¶¶ 60, 63.  Any

person may move to Jersey City without informing local government authorities.  There can be

no injury fairly traceable to the use of SOTA by 176 households to pay for rent in Jersey City.

    **C.**    **Jersey City Does Not Demonstrate That Any Harm Can Be Redressed in This Case**

        In addition, the relief Jersey City seeks would not redress any injury it alleges

because the proposed complaint is based exclusively on outdated facts.  *Finkelman*, 877 F.3d at

511; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not

remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence

of the redressability requirement.").  Jersey City seeks to enjoin SOTA on the basis of conditions

described in the DOI Report, including allegedly inadequate inspections and paperwork and the

practice of pre-paying a year's worth of rent.  Proposed Compl. ¶¶ 57-64.  But, as demonstrated

by that report and the declarations of Sheila Corbin, each of those conditions has been or is being

addressed.  ECF Doc. No. 22-6 (DOI Report at 11-15; ECF Doc. No. 15-4 (Corbin Decl. ¶¶ 24,

27-29, 31-32); ECF Doc. No. 35-1 (Supp. Corbin Decl. ¶ 2).  In particular, beginning in February

2020, rental payments to landlords are to be made in monthly installments, and SOTA recipients

will be able to halt monthly payments in appropriate circumstances.  *Id.*  Jersey City's proposed

complaint wholly ignores these changed circumstances.  As a result, Jersey City has not alleged

that the SOTA program, as it is currently implemented, creates a public nuisance that would or could be redressed through the injunction that Jersey City seeks. [3]

Jersey City's other demands for relief likewise would not remedy any alleged harm identified in Jersey City's complaint. *See* Proposed Compl. at 12-13, 15-17 ("wherefore" clauses). In particular, the inspections Jersey City seeks of apartments where SOTA recipients currently live have no reasonable prospect of serving a remedial purpose because Jersey City does not identify any actual, existing nuisance conditions in Jersey City at all, much less any such conditions arising out of SOTA. Nor would a trust for the benefit of SOTA recipients result in the correction of any substandard conditions assumed by Jersey City to exist. The vast attenuation between the supposed harm and the relief Jersey City seeks badly fails to satisfy the redressability requirement.

Jersey City's threadbare pleading does not establish its standing to bring either a dormant Commerce Clause or public nuisance claim. This failure to establish standing warrants denial of Jersey City's motion to intervene as of right.

## II.    THE MOTION TO INTERVENE SHOULD BE DENIED BECAUSE JERSEY CITY FAILS TO MEET THE REQUIREMENTS OF RULE 24(A)

Jersey City's motion to intervene should also be denied because Jersey City does not have a right to participate in this lawsuit. Jersey City fails to demonstrate any legally cognizable interest that would be impaired by a disposition in this case—or show that Newark

---

[3] Indeed, the significant changes to the SOTA program—some of which have been implemented since the start of this litigation—moot the case. *See* Point III below.

does not adequately represent its interest in this lawsuit—as required for intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure.[4]

**A.  Jersey City Has No Legally Protectable Interest in This Case**

Jersey City utterly fails to show a legally protected interest in Newark's lawsuit against NYC because it does not and cannot state a claim for which relief may be granted.  A movant does not have a sufficient interest in a lawsuit where it fails to establish entitlement to the relief it seeks.  *Brody v. Spang*, 957 F.2d 1108, 1116-117 (3d Cir. 1992); *Donaldson v. United States*, 400 U.S. 517, 531 (1971), *superseded by statute*, 26 U.S.C.S. § 7609, *as recognized in Ip v. United States*, 205 F.3d 1168, 1171-72 (9th Cir. 2000).  Likewise, order to establish an interest in litigation that rises to the level of intervention, a movant must show that its own concrete, legal interests will be decided by the court.  *Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987); *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 256-57 (3d Cir. 2017); *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).  Jersey City cannot make either required showing here and accordingly, its motion to intervene should be denied.[5]

---

[4] Although Rule 24(b) also provides for *permissive* intervention, Jersey City moves for intervention only as of right under Rule 24(a).  *See* Jersey City Br. at 10, 15.  In any event, permissive intervention should not be permitted here.  Permissive intervention is entirely discretionary, and where, as here, the movant fails to show that it has a right to intervene, there can be no abuse of discretion in denying permissive intervention.  *Brody*, 957 F.2d at 1124.

[5] Jersey City asserts, incorrectly, that motions to intervene are "broadly construed in favor of potential intervenors."  Jersey City Br. at 11.  In fact, the Supreme Court and Third Circuit have given the "interest" requirement a narrow reading.  *Donaldson,* 400 U.S. at 530-31; *Kleissler*, 157 F.3d at 972; 6 Moore's Federal Practice – Civil § 24.03 (2019).  Furthermore, while the Third Circuit reviews a district ccomplaourt's denial of a motion to intervene as of right for abuse of discretion, its review "is more stringent than the abuse of discretion review [it] appl[ies] to a denial of a motion for permissive intervention." *United States v. Alcan Aluminum*, 25 F.3d 1174, 1179 (3d Cir. 1994).  Even the case Jersey City cites for the proposition that motions to intervene are liberally construed does not so hold.  *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967); Jersey City Br. at 11.  That case remarks only that the fourth element of intervention as of

Jersey City's causes of action under the dormant Commerce Clause and the common law of public nuisance are facially defective.  The dormant Commerce Clause prohibits states and localities from engaging in "economic protectionism" by "regulat[ing] or otherwise burden[ing] the flow of interstate commerce." *McBurney v. Young*, 569 U.S. 221, 235 (2013).  It "responds principally to state taxes and regulatory measures impeding free private trade in the national marketplace," *Reeves, Inc. v. Stake*, 447 U.S. 429, 437 (1980), by prohibiting "discriminating between transactions on the basis of some interstate element." *Comptroller of the Treasury v. Wynne*, 135 S. Ct. 1787, 1794 (2015); *Philadelphia v. New Jersey*, 437 U.S. 617, 626-27 (1978) (dormant Commerce Clause violation where regulation "discriminat[es] against articles of commerce coming from outside the State").

Jersey City's proposed complaint makes no effort to explain how SOTA grants—which enable certain eligible individuals to *move to* and *contribute to* Jersey City's economy—regulate interstate commerce or amount to "economic protectionism." *See West Lynn Creamery*, 512 U.S. at 199.  The proposed complaint alleges in a conclusory way that SOTA "unlawfully burdens" Jersey City, Proposed Compl. ¶ 51, but identifies no ways in which SOTA impedes the flow of interstate commerce, burdens private trade in the Jersey City marketplace, or discriminates between transactions on the basis of some interstate component.  Indeed, nothing about SOTA implicates the dormant Commerce Clause, much less violates it.

Jersey City's public nuisance cause of action is also fatally flawed.  In an apparent bid to hold NYC responsible for illegal or uninhabitable housing in Newark, Jersey City alleges that NYC "incentivized poor and illegal conduct" by paying a year's worth of rent to landlords up front and "failing to inspect" apartments.  Proposed Compl. ¶¶ 60-61, *see also id.* ¶ 44.  But

---

right—inadequate representation of the prospective intervenor's interest by existing parties to the litigation—should be liberally applied.

Jersey City cannot leverage a nuisance claim to make NYC responsible for the upkeep of housing in Jersey City or the conduct of Jersey City property owners. "[B]y definition," a public nuisance "is related to conduct, performed *in a location within the actor's control*." *Lead Paint Litigation*, 191 N.J. at 429 (emphasis added). An entity, like NYC here, cannot be "civilly liable for a nuisance caused or promoted by others over whom he has no control, " such as landlords in Jersey City. *N.J. Dep't of Envtl. Protection v. Exxon Corp.*, 151 N.J. Super. 464, 483 (Ch. Div. 1977); *see also Camden Cty. Bd. of Chosen Freeholders v. Beretta*, 273 F.3d 536, 539 (3d Cir. 2001) (citing *Exxon*, 151 N.J. Super. at 483-84) ("For the interference to be actionable, the defendant must exert a certain degree of control over its source."). Moreover, particularly where, as here, the requested relief is injunctive, a cause of action only properly lies where the defendant can abate the nuisance. *See Lead Paint Litigation*, 191 N.J. at 428-29. Indeed, the public nuisance tort "has historically been linked to the use of land by the one creating the nuisance." *Id.* at 423; *see also Cioletti v. Continental Airlines, Inc.*, 2011 U.S. Dist. LEXIS 81135, at *10 (D.N.J. July 25, 2011).

NYC does not exercise control over Jersey City housing or property owners, nor could it abate a nuisance at a Jersey City property—and Jersey City does not allege otherwise. Therefore, no nuisance claim lies against NYC. In fact, Jersey City's own Property Maintenance Code makes clear that private landlords are responsible for abating any nuisance that might exist in their buildings. Jersey City Property Maintenance Code § 254-19. And Jersey City already has a system in place to remedy violations of its housing code and to hold landlord-violators accountable. *See* Jersey City Property Maintenance Code § 254-16 (noting

that all residential buildings "shall be inspected from time to time by the enforcing officer of the city"); § 254-19 (landlord has the responsibility to abate Code violation."[6]

Moreover, Jersey City premises its theory of public nuisance on facts it knows to be completely outdated:  as the DOI Report explains, New York City has substantially amended the paperwork it requires brokers and landlords to sign; enhanced its apartment review process; and begun development of an escrow system to pay landlords on a monthly basis.  *See supra* at 7.  But even on the facts Jersey City alleges, its theory of public nuisance fails.

**B.      Even if Jersey City Did or Could State a Sufficient Interest, It Fails to Demonstrate That Any Such Interest Will Be Impaired by the Lawsuit**

Even if Jersey City had a legally cognizable interest, it has failed to demonstrate that such interest that will be affected, much less decided, by this lawsuit.  The crux of Jersey City's position appears to be that because some SOTA recipients have found homes in Jersey City, and because the Court might enter orders about SOTA in this action, Jersey City has the right to intervene.  Jersey City Br. at 13.  But a generalized interest in the subject matter of a case, like Jersey City's here, does not support intervention.  *Harris*, 820 F.2d at 599.  Jersey City must identify a particularized interest arising out of its own legal rights that will be decided in the instant lawsuit.  *Id.*

Jersey City's assertion that it should be permitted intervention because its stance in subsequent litigation over SOTA would be impaired by rulings made by this Court fares no better.   Jersey City Br. at 14.  The Third Circuit has held that "a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial

---

[6] The Code's procedure for conducting periodic inspections further renders utterly implausible Jersey City's allegation that it has been "precluded from" confirming that SOTA recipients' "housing is habitable."  Proposed Compl. ¶¶ 45-48.  Jersey City remains as free to inspect rental units in Jersey City as it deems appropriate.

district, or even upon the same judge in a different case," and therefore, there is no "stare decisis" effect that impairs a proposed intervenor's rights. *Seneca Res. Corp.*, 863 F.3d at 257 (internal quotation marks omitted); *Benjamin v. Dep't of Pub. Welfare of Pa.*, 432 F. App'x 94, 98 (3d Cir. 2011) (affirming denial of intervention where proposed intervenors "would be free to file their own suit"). The Newark litigation thus does not impair Jersey City's ability to protect any interest it has in bringing its own lawsuit against New York.[7]  The Newark litigation neither establishes nor affects Jersey City's legal rights and accordingly, there is no basis for Jersey City to intervene.

### C.   Even if Jersey City Had an Interest, Newark Adequately Represents That Interest in This Case

Jersey City has no cognizable interest in this litigation, but even if it did, that interest would be adequately represented by Newark.  The burden is on the party applying for intervention to show that representation of its interest by an existing party is inadequate because (1) the applicant's interests diverge sufficiently from those of the existing party that the existing party cannot devote proper attention to the applicant's interests; (2) there is collusion between the representative party and the opposing party; or (3) the representative party is not diligently prosecuting the suit. *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982); *see also*, 957 F.2d at 1123.  The movant must establish that it "bring[s] something to the litigation that otherwise would be ignored or overlooked if the matter were left to the already-existing parties."

---

[7] Jersey City's position here is a far cry from successful intervenors as of right. *See, e.g.*, *Benjamin*, 701 F.3d at 957 (approving intervention where settlement affected ability of intervenors to remain in their preferred housing); *Kleissler*, 157 F.3d at 972-73 (approving intervention as of right where relief sought by plaintiffs would have immediate, adverse financial effect on intervenors' legally cognizable interests); *United States v. Alcan Aluminum*, 25 F.3d 1174 (3d Cir. 1993) (holding that intervention of right appropriate if proposed consent decree extinguished intervenors' statutory right of contribution).

6 Moore's Federal Practice – Civil § 24.03 (2019).  Where, by contrast, the plaintiff and movant "share the same interest," the existing party adequately represents the interests of the absentee. *Camden Police Cases v. State Nat'l Ins. Co. (In re Camden Police Cases)*, 2012 U.S. Dist. LEXIS 136302, at *17 (D.N.J. Sept. 24, 2012).

Here, there is no issue raised in the proposed complaint that would be ignored if Jersey City were not allowed to intervene.  Jersey City's proposed complaint raises the exact same legal theories as Newark's, which are fully briefed on Newark's motion for a preliminary injunction, and adds no factual or other gloss that would be overlooked absent intervention. Therefore, Jersey City does not and cannot establish that Newark does not adequately represent its interests.

## III.    JERSEY CITY'S CLAIMS ARE MOOT

Jersey City's motion to intervene should be denied for the additional reason that its public nuisance claim, predicated on features of the SOTA program that no longer exist, is moot.  "The doctrine of mootness requires that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Seneca Res. Corp.*, 863 F.3d at 254 (internal quotation marks omitted).  "If a defendant has discontinued challenged activities . . . the case is moot if there is no reasonable expectation that the wrong will be repeated."  *Hudson v. Robinson*, 678 F.2d 462, 465 (3d Cir. 1982) (citing *United States v. W. T. Grant Company*, 345 U.S. 629, 632 (1953)).  A motion to intervene must be denied if the claim asserted by the proposed intervenor is moot.  *Seneca Res. Corp.*, 863 at 255-56.

Jersey City's public nuisance claim is moot because NYC has made numerous substantial changes to SOTA that render outdated the factual allegations set forth in the proposed complaint.  In particular, whereas Jersey City alleges that the up-front payment of one year's rent

incentivized landlords to engage in misconduct, Proposed Compl. ¶ 60, the fact is that going forward, rent is to be paid monthly.  ECF Doc. No. 15-4 (Corbin Decl. ¶ 47); ECF Doc. No. 35-1 (Supplemental Corbin Decl. ¶ 2).  Similarly, Jersey City's complaints about other aspects of the administration of SOTA—such as allegedly inadequate inspections and paperwork, Proposed Compl. ¶ 59—have been addressed as reflected in the DOI Report.  ECF Doc. No. 22-6 (DOI Report at 13-15); *see also* ECF Doc. No. 15-4 (Corbin Decl. ¶¶ 24, 27-29, 31-32).  These steps taken by NYC to address perceived shortcomings of SOTA moot Jersey City's public nuisance claim, together with its motion to intervene in order to advance that claim.

## CONCLUSION

For the foregoing reasons, Jersey City's motion to intervene as of right should be denied.

Dated:      New York, New York
            January 17, 2020

Respectfully submitted,

JAMES E. JOHNSON
Corporation Counsel of the City of New York

By:   */s/ Brian T. Horan*  
            Brian T. Horan
            Doris F. Bernhardt*
            New York City Law Department
            100 Church Street
            New York, NY 10007
            212.356.2297/2296
            bhoran@law.nyc.gov
            dbernhar@law.nyc.gov

            *Admitted *pro hac vice*

*Attorneys for Defendants/Counterclaimant*