

# THE CITY OF NEW YORK
## LAW DEPARTMENT

**JAMES E. JOHNSON**
*Corporation Counsel*

100 CHURCH STREET
NEW YORK, NEW YORK 10007

**BRIAN T. HORAN**
*Senior Counsel*
Affirmative Litigation Division
212.356.2297
bhoran@law.nyc.gov

February 9, 2021

**Via ECF**

Hon. Leda Dunn Wettre, U.S.M.J.
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

    Re:    *City of Newark et al. v. City of New York et al.*
               Case No. 2:19-cv-20931-MCA-LDW

Dear Judge Wettre:

        As counsel for Defendants the City of New York, Mayor Bill de Blasio, and Commissioner Steven Banks (collectively, "NYC"), we submit this pre-motion letter in connection with NYC's request for leave to move to dismiss as moot the Complaint of Plaintiff the City of Newark ("Newark") and for judgment on the pleadings against Newark.

        Newark brought this action in December 2019 challenging and seeking to enjoin NYC's Special One Time Assistance program ("SOTA") based on the program's initial implementation. However, the program described in the Complaint and sought to be enjoined no longer exists. In the early months of this case, recognizing flaws in the original version of the program and responding to an investigation by the New York City Department of Investigation ("DOI") that took place before Newark filed its Complaint, NYC completed a comprehensive overhaul of SOTA. NYC has revamped its process for approving SOTA apartments and landlords, updated its voluntary agreements with SOTA recipients, and, in February 2020, implemented a SOTA helpline and started paying rent monthly instead of up-front for the year. These changes address the basis for the claims Newark asserts in the Complaint. There is no reasonable prospect that NYC will reverse course. The changes to the program are incorporated into publicly available program documents and have been fully implemented.[1] Moreover, as of December 31, 2020, there are no tenants in Newark receiving SOTA grants; all SOTA leases in

---

[1] *See* https://www1.nyc.gov/site/hra/help/sota-documents.page.

Hon. Leda Dunn Wettre, U.S.M.J.
February 9, 2021
Page 2

Newark have expired.  If NYC ever resumes issuing SOTA grants for apartments in Newark, it will do so under the new version of the program with all of its improved safeguards.  The Complaint is moot and should be dismissed.

In addition, Newark's claims are meritless and subject to dismissal under Rule 12(c).  Newark's public nuisance claim fails primarily because NYC did not create and does not control the allegedly substandard apartment conditions that form the basis for Newark's theory of public nuisance.  Likewise without merit, Newark's dormant commerce clause claim turns that clause on its head because SOTA promotes interstate commerce; it does not impair it.  For these and the additional reasons set forth below, leave for NYC's motion should be granted.

**I.     Mootness**

Where the prevailing circumstances have rendered a case moot, the court lacks subject matter jurisdiction and must dismiss the complaint.  Fed. R. Civ. P. Rule 12(h)(3); *see also* Rule 12(b)(1); *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891-92 (3d Cir. 1977).  A "live" issue must exist between the parties at all stages of review.  *Old Bridge Owners Cooperative Corp. v. Township of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001); *see also Seneca Resources Corp. v. Township of Highland*, 863 F.3d 245, 254 (3d Cir. 2017).  The question is not whether, hypothetically, the plaintiff might have claims in the future based on the new facts, but whether developments have rendered the plaintiff's actual, pending claims non-justiciable.  *See Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007); *Hartnett v. Pennsylvania State Education Association*, 963 F.3d 301, 309 (3d Cir. 2020).

One way for a case to become moot is cessation of the challenged conduct.  *See Hartnett*, 963 F.3d at 307.  While courts inquire whether the defendant made the change "unilaterally and so may 'return to [its] old ways' later on," *id.*, the cessation nonetheless moots the case "if there is no reasonable expectation that the wrong will be repeated." *Hudson v. Robinson*, 678 F.2d 462, 465 (3d Cir. 1982).

Newark's claims are moot because all leases under the old version of the program have now expired.  Indeed, there is no one presently living in Newark under the program.  Going forward, anyone who might move to Newark using SOTA will benefit from the substantial program reforms that thoroughly address the alleged problems on which Newark bases its legal claims.  The Complaint alleges four such problems: *first*, annual up-front payments to landlords that created a "perverse disincentive" for landlords to neglect properties; *second*, inadequate apartment inspections; *third*, failure to respond to complaints from program participants; and *fourth*, supposedly "coercive" tactics that NYC allegedly employed against SOTA participants.  These allegations are all directed at the original version of SOTA and, even if taken as true about that iteration of the program, are not applicable to SOTA today.[2]  Moreover, there is no reasonable likelihood that NYC will revert to that earlier version of the program.

---

[2] NYC acknowledges that the original version of the program was flawed in certain respects.  NYC strongly denies that it used coercive tactics as alleged by Newark in utterly conclusory fashion.

### A. Change to Monthly Payments from Up-Front Annual Payments

According to the Complaint, "Defendants pay landlords a full one-year's rent up front." Compl. ¶ 13. This is no longer true. Landlords are now paid month-to-month. *See* SOTA Program Participant Agreement, at 1.[3] The Complaint further alleges that "Defendants' actions created, and continue to create, perverse disincentives to landlords who stand to gain financially by providing illegal and uninhabitable housing to residents with the expectation of no repercussions . . . ." Compl. ¶ 116. The reformed version of SOTA does not create any such disincentives, as SOTA participants now have the ability to cause rent to be withheld in appropriate circumstances, including landlords' failure to maintain apartments in habitable condition.

The change from annual to monthly rental payments likewise moots the individual accounts of landlord neglect alleged in the Complaint. SOTA Recipient 1 "complained to her landlord [about apartment conditions] but her complaints were never addressed." Compl. ¶ 36. Sha-Kira Jones "notified her landlord about the electric heater's knob exploding but he did not fix it," *id.* ¶ 62, and after continuing to experience problems, "called the landlord, [but] he refused to fix the heat and electricity," *id.* ¶ 70. These types of problems can now be addressed through the withholding of rent. Because landlords are no longer paid the full year's rent up front, it cannot be the case, as alleged with respect to Ms. Jones, that "the landlord didn't care about her or her living conditions *because the landlord was already paid*." *Id.* ¶ 91 (emphasis added).

### B. Enhanced Due Diligence

Newark's Complaint alleges that "[t]he SOTA Program . . . requires the Department of Homeless Services ('DHS'), or provider-staff or case managers, to conduct walk-throughs of all apartments . . . ," Compl. ¶ 14, but Defendants "failed to inspect, or failed to adequately inspect, the apartments . . . ," *id.* ¶ 16. Newark further alleges that "Defendants failed to provide a system to adequately hold participating landlords and real estate brokers accountable for illegal and/or uninhabitable housing." *Id.* ¶ 17. Newark also alleges that after a SOTA tenant vacated an apartment, "the landlord was free to accept a new SOTA recipient." *Id.* ¶ 18.

These allegations have been superseded by program changes. In October 2018, a little over one year into the program, NYC revamped its procedures, creating the comprehensive Apartment Review Checklist (ARC)—further enhanced in 2019—and requiring continuous training for individuals conducting apartment reviews. The ARC requires, among other things, verification that the apartment has heat and that the apartment's electrical and plumbing systems appear to be working. Moreover, under the SOTA landlord agreement that was strengthened in response to the Department of Investigation report, landlords must certify that they are obligated to comply with all applicable building and housing codes and maintain the apartment throughout the SOTA tenancy. In addition, under the agreement, landlords cannot lease a unit to two SOTA

---

[3] *See* https://www1.nyc.gov/assets/hra/downloads/pdf/sota/DHS-10-E-SOTA-Participant-Agreement.pdf.

Hon. Leda Dunn Wettre, U.S.M.J.
February 9, 2021
Page 4

recipients in a row.  Declaration of Sheila Corbin dated Dec. 13, 2019, ¶ 24 [ECF No. 15-4]; SOTA Landlord Agreement, *available at* https://on.nyc.gov/2Xc50FH; SOTA Apartment Review Checklist, *available at* https://on.nyc.gov/3b80FM3.

The Complaint does not make any allegations about apartment conditions for tenancies beginning after these changes took effect.  Four of the five individuals described in the Complaint moved to Newark before NYC began using the ARC in October 2018.  With respect to the fifth, Ranisha Howard, the Complaint makes no allegations about her apartment except to state that it was "a legal apartment."  Compl. ¶¶ 22, 94.  NYC's overhaul of the apartment review and due diligence processes moots Newark's allegations that the old SOTA program resulted in tenants' occupying uninhabitable apartments.

### C.  Hotline

Newark's Complaint alleges that Defendants "have ignored complaints from SOTA recipients of the illegal and uninhabitable apartments where SOTA recipients were unlawfully placed."  Compl. ¶ 105.  In fact, since February 2020, NYC has implemented a hotline for SOTA recipients who want or need help during their tenancies.  NYC advises SOTA recipients that they should contact the hotline if they are experiencing problems with their housing; are being evicted; are facing a loss or reduction of income and need a referral for job training or career services; or are otherwise having issues that may affect their ability to remain in permanent housing.  New Hotline and Payment Information for SOTA, *available at* https://www1.nyc.gov/assets/hra/downloads/pdf/sota/DHS-10g-E-New-Hotline-and-Payment-Information-for-SOTA.pdf.  This initiative constitutes yet another building block of a program that is fundamentally different than the one described in Newark's Complaint.

### D.  Alleged Coercion

The Complaint alleges that "several SOTA recipients were unlawfully coerced to move to Newark by the Defendants . . . ."  Compl. ¶ 22; *see also id.* ¶¶ 16, 104, 106.  As the ostensible basis for this conclusion, the Complaint alleges that SOTA Recipient 1 "felt pressured to leave the shelter" by case managers there, *id.* ¶¶ 26-27; that Sha-Kira Jones "felt pressured [by shelter staff] to choose one of the apartments that she was shown in New Jersey," *id.* ¶ 53; and that Loreal Ball "felt forced to move in because [she was told that] NYC 'had already cut the check,'" *id.* ¶ 95.

None of these accounts describes coercive or otherwise actionable conduct.  Families and individuals in shelter are expected to consistently, diligently, and actively search for and locate permanent homes.[4]  Moreover, in the SOTA participant agreement last revised in February 2020, applicants are fully apprised about the nature of the program and acknowledge that they have personally selected their apartments.  This demonstrates that participants voluntarily choose to accept SOTA grants.  There is no allegation in Newark's Complaint to the contrary, and certainly not about the SOTA program as it now exists.

---

[4] *See* https://www1.nyc.gov/site/dhs/shelter/families/families-with-children-shelter.page.

### E.     The SOTA Program Changes Are Here to Stay

NYC undertook the foregoing program reforms in order to strengthen the program and respond to the recommendations set forth in the Department of Investigation report, publicly released on December 5, 2019. For example, in its responses to the DOI report—which were being formulated well before Newark filed its lawsuit—NYC stated that it would change from annual to monthly rent and would strengthen its due diligence. DOI Report at 11-15 [ECF No. 8-1]. Given DOI's role as an external check on NYC's implementation of the program, it cannot be said that NYC undertook these changes "unilaterally" and could reverse them freely. *Hudson*, 678 F.2d at 465. Nor were there changes made simply in order to moot the case. *See Hartnett*, 963 F.3d at 306-07. Moreover, and in any event, there is no "reasonable likelihood" that the conduct complained of by Newark—chiefly, up-front annual payments and the apartment review process used before the adoption of the current ARC— will recur. *Id.* at 307. The program changes are fully incorporated into SOTA.[5]

\* \* \*

The changes NYC has made to the SOTA program supersede Newark's factual allegations and make its claims for relief non-justiciable. The Complaint seeks prospective equitable relief, not damages. Principally, the Complaint seeks an injunction restraining implementation of SOTA in Newark. The program that Newark asks the Court to enjoin, however, no longer exists in the form complained of by Newark. The Court cannot enjoin the implementation of a non-existent program. As for the reformed version of the program that now exists, Newark's Complaint—which dates to December 2019—makes no allegations about the program, much less allegations giving rise to a legally cognizable claim. Newark is thus asking the Court to issue "an opinion advising what the law would be upon a hypothetical state of facts." *Old Bridge*, 246 F.3d at 314. This is beyond the role of the judiciary.

By revamping the program, NYC has ceased the challenged conduct, to the extent it ever took place. Therefore, Newark's Complaint does not make out legal claims that can survive the mootness inquiry and establish this Court's ongoing subject matter jurisdiction as required for this case to proceed.

## II.     Judgment on the Pleadings

NYC should also be permitted to move for judgment on the pleadings under Fed. R. Civ. P. Rule 12(c), which provides that a party may move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." The standard is the same as that under Rule 12(b)(6): the allegations in the Complaint must "state a claim to relief that is

---

[5] The program changes were fully in place by February 2020. The last of the Newark leases, all of which were executed before these changes were fully implemented, expired in December 2020. At that point, when there was no longer anyone in Newark participating in the now-defunct version of the program, Newark's Complaint became moot beyond doubt. NYC requested leave to file its motion the following month.

Hon. Leda Dunn Wettre, U.S.M.J.
February 9, 2021
Page 6

plausible on its face." *Newark Cab Association v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018); *see Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004). Because the allegations in Newark's Complaint do not state a plausible claim for public nuisance or a violation of the dormant commerce clause, Newark's claims against NYC can be disposed of as a matter of law.

A public nuisance is an unreasonable interference with a right common to the general public that, "by definition, is related to conduct, performed in a location within the actor's control, which has an adverse effect on" the common right. *In re Lead Paint Litigation*, 191 N.J. 405, 425, 429 (2005). Liability attaches to the "creat[ion]" of the nuisance. *Id.* at 444. Newark's public nuisance claim fails because NYC did not create the allegedly substandard apartment conditions in Newark, and NYC does not control any of the apartments where remediation might be required. To the extent Newark speculates that SOTA might possibly lead to increased homelessness in Newark, the claim is likewise not cognizable, because homelessness is not a nuisance. *See Edwards v. California*, 314 U.S. 160, 174 (1941); *Township of West Orange v. Whitman*, 8 F. Supp. 2d 408, 433 (D.N.J. 1998). In any event, Newark's rank speculation is unsupported by any factual allegation that SOTA actually increased homelessness during the two-year period when it operated in Newark prior to the filing of the Complaint. As such, it is insufficient to save the claim. *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) ("[f]actual allegations must be enough to raise a right to relief above the speculative level").

Newark's claim under the dormant commerce clause also fails. The dormant commerce clause prohibits state and local regulations that impair interstate commerce. *McBurney v. Young*, 569 U.S. 221, 235 (2013); *Comptroller of the Treasury v. Wynne*, 135 S. Ct. 1787, 1794 (2015). Far from impairing interstate commerce, SOTA pays money *into* interstate commerce. Moreover, contrary to Newark's contention, Compl. ¶ 101, SOTA does not "differentially burden[]" interstate commerce in Newark in any way, because the program operates in the same way in Newark as it does in NYC. SOTA does not discriminate against interstate commerce and therefore does not run afoul of the Constitution as alleged by Newark.

A motion under Rule 12(c) is timely because discovery in this case has scarcely begun. Newark has not served discovery requests on NYC, despite the original deadline of October 23, 2020. Newark also has not responded to discovery requests propounded by NYC more than three months ago, recently requesting and obtaining an extension until March 31, 2021 to do so. The contemplated motion will not delay trial. Therefore, leave should be granted.

                                                Respectfully submitted,

                                                JAMES E. JOHNSON
                                                Corporation Counsel of the City of New York

                                                By:   */s/ Brian T. Horan*
                                                          Brian T. Horan

                                                *Attorney for Defendants*