JAMES E. JOHNSON
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007

By:    Brian T. Horan
       Doris F. Bernhardt (*pro hac vice*)
       Assistants Corporation Counsel
       212.356.2297/2296
       bhoran@law.nyc.gov
       dbernhar@law.nyc.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------- x

CITY OF NEWARK,

           Plaintiff-Crossclaim Defendant,

CITY OF JERSEY CITY,

           Intervenor Plaintiff,

CLASS OF AFFECTED TENANTS,

           Plaintiffs-Intervenors,

vs.

CITY OF NEW YORK; MAYOR BILL DE BLASIO,
in his official capacity; COMMISSIONER STEVEN
BANKS, in his official capacity,

           Defendants.

-------------------------------------------------------------- x

**Document Filed Electronically**

Case No.
2:19-cv-20931-MCA-LDW

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## AND FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

FACTS ...................................................................................................................3

      A.     SOTA Program.................................................................................3

      B.     Newark's Lawsuit............................................................................7

ARGUMENT ...........................................................................................................9

   I.    IN LIGHT OF NYC'S OVERHAUL OF THE SOTA PROGRAM, THIS COURT LACKS SUBJECT MATTER JURISDICTION...................................9

      A.     THE COMPLAINT SHOULD BE DISMISSED AS MOOT ..................9

          1.    Material Changes to the SOTA Program Moot the Case .................11

          2.    There Is No Reasonable Likelihood that NYC Will Revert to the Original Version of the SOTA Program .....................................14

      B.     BECAUSE NEWARK DOES NOT DEMONSTRATE THAT IT WILL EXPERIENCE INJURY FROM THE SOTA PROGRAM, ITS REQUEST FOR INJUNCTIVE RELIEF IS NOT JUSTICIABLE .........................................................................14

   II.   JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED AGAINST NEWARK........................................................................15

      A.     NEWARK'S PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED....................................................................................15

          1.    NYC Does Not Control Newark's Dilapidated, Substandard Housing ........................................................................................16

          2.    Homelessness Is Not a Public Nuisance ...........................................18

          3.    SOTA Is Not a Public Nuisance.......................................................19

      B.     NEWARK FAILS TO PLAUSIBLY ALLEGE THAT THE SOTA PROGRAM VIOLATES THE DORMANT COMMERCE CLAUSE ......................................................................................20

CONCLUSION.......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bangura v. City of Phila.*,
    338 F. App'x 261 (3d Cir. July 29, 2009) ........................................................... 18

*Camden County Board of Chosen Freeholders v. Beretta*,
    273 F.3d 536 (3d Cir. 2001) ...................................................... 16, 18, 19

*Cioletti v. Continental Airlines, Inc.*,
    2011 U.S. Dist. LEXIS 81135 (D.N.J. July 25, 2011) ........................................ 16

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................. 14, 15

*Comptroller of the Treasury v. Wynne*,
    135 S. Ct. 1787 (2015) ............................................................. 20

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) .......................................................... 3

*Khodara Envtl., Inc. ex rel Eagle Envtl., L.P. v. Beckman*,
    237 F.3d 186 (3d Cir. 2001) .......................................................... 10

*Edwards v. California*,
    314 U.S. 160 (1941) ............................................................. 3, 19

*Gould Elecs., Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) .......................................................... 3

*Hartnett v. Pennsylvania State Education Association*,
    963 F.3d 301 (3d Cir. 2020) .......................................................... 10

*Houbigant, Inc. v. Fed Ins. Co.*,
    374 F.3d 192 (3d Cir. 2004) .......................................................... 21

*Hudson v. Robinson*,
    678 F.2d 462 (3d Cir. 1982) ...................................................... 10, 14

*In re Lead Paint Litigation*,
    191 N.J. 405 (2005) ........................................................ 2, 16, 17, 21

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*,
    510 F.3d 253 (3d Cir. 2007) .......................................................... 10

*Martin v. City of Boise,*
    920 F.3d 584 (9th Cir. 2019) ............................................................. 19

*McBurney v. Young,*
    569 U.S. 221 (2013) ........................................................................... 20

*McNair v. Synapse Group, Inc.,*
    672 F.3d 213 (3d Cir. 2012) ............................................................... 15

*Mortensen v. First Federal Savings & Loan Association,*
    549 F.2d 884 (3d Cir. 1977) ......................................................... 10, 11

*N.J. Department of Environmental Protection v. Exxon Corp.,*
    151 N.J. Super. 464 (Ch. Div. 1977) ................................................. 16

*N.Y. State Rifle & Pistol Ass'n v. City of N.Y.,*
    140 S. Ct. 1525 (2020) ....................................................................... 11

*Nextel W. Corp. v. Unity Township,*
    282 F.3d 257 (3d Cir. 2002) ............................................................... 10

*Old Bridge Owners Cooperative Corp. v. Township of Old Bridge,*
    246 F.3d 310 (3d Cir. 2001) ............................................................... 10

*Papachristou v. City of Jacksonville,*
    405 U.S. 156 (1972) ........................................................................... 19

*Philadelphia v. New Jersey,*
    437 U.S. 617 (1978) ........................................................................... 20

*Reeves, Inc. v. Stake,*
    447 U.S. 429 (1980) ........................................................................... 20

*Rendell v. Rumsfeld,*
    484 F.3d 236 (3d Cir. 2007) ............................................................... 10

*Revell v. Port Auth.,*
    598 F.3d 128 (3d Cir. 2010) ................................................................. 3

*Seneca Resources Corp. v. Township of Highland,*
    863 F.3d 245 (3d Cir. 2017) ............................................................... 10

*Smith v. Chrysler Fin. Co.,*
    2004 U.S. Dist. LEXIS 28504 (D.N.J. Dec. 30, 2004) ..................... 15

*St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands,*
    218 F.3d 232 (3d Cir. 2000) ............................................................... 15

*Township of W. Orange v. Whitman*,
   8 F.Supp.2d 408 (D.N.J. 1998) ................................................................................ 18, 19

*United States v. Bedford*,
   519 F.2d 650 (3d Cir. 1975) ...................................................................................... 21

*West Lynn Creamery, Inc. v. Healy*,
   512 U.S. 186 (1994) ................................................................................................... 20

**Statutes**

Newark Municipal Code, §§ 18:3-1.1 *et seq.* ............................................................... 17

Newark Municipal Code §§ 18:6-10.1 *et seq.* ................................................... 8, 9, 17

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(1) ................................................................................... 9, 10

Fed. R. Civ. P. Rule 12(b)(6) ......................................................................................... 3

Fed. R. Civ. P. Rule 12(c) ......................................................................................... 3, 9

Fed. R. Civ. P. Rule 12(h)(3) ........................................................................................ 9

New Jersey Rule 4:6-2e ................................................................................................ 21

*Restatement (Second) of Torts* § 821B(1) ................................................................. 19

Defendants the City of New York, Mayor Bill de Blasio, and Commissioner Steven Banks (collectively, "NYC") respectfully submit this memorandum of law in support of their motion to dismiss the City of Newark's ("Newark") Complaint for lack of subject-matter jurisdiction and for a judgment on the pleadings.

## PRELIMINARY STATEMENT

The Special One-Time Assistance ("SOTA") program provides one-year rental grants to individuals and families with income who are living in shelter, so that they can move to permanent homes in communities of their choice. Relying on a handful of tenant complaints about an early, now-defunct version of the program, Newark seeks to permanently enjoin New York City from re-starting the SOTA program in Newark. Newark's Complaint should be dismissed as moot because Newark's factual allegations relate to a version of the SOTA program that has already been discontinued and all SOTA leases for Newark have expired. For the same reasons, Newark does not have standing to seek a prospective injunction against SOTA. In addition, judgment on the pleadings should be granted in NYC's favor because as a matter of law, the Complaint does not make out Newark's causes of action for public nuisance and violation of the dormant Commerce Clause.

Each of Newark's criticisms of the SOTA program is stale and outdated. The Complaint alleges that SOTA pre-pays rent in one annual lump sum, leaving tenants without any recourse when landlords fail to maintain apartments. But, the practice of pre-paying rent was discontinued over a year ago. Now, SOTA disburses rent on a monthly basis, and rent may be withheld if a landlord fails to maintain a unit. The Complaint further alleges, based on years-old testimonials, that NYC's process for vetting and inspecting SOTA apartments is inadequate. However, NYC has introduced a series of formal safeguards to enhance its apartment review

process so that SOTA recipients move into homes that are safe and appropriate. The Complaint does not set forth allegations providing sufficient cause to believe that the improved inspection and vetting process is inadequate. Similarly, although the Complaint asserts that SOTA does not offer support or help SOTA recipients after they leave NYC and is coercive in nature, the SOTA program is in fact voluntary, transparent, and—as of February 2020—offers SOTA recipients a dedicated hotline where they can get help and support during and after their SOTA tenancy. Because Newark challenges a defunct, superseded version of the program that does not apply to any current SOTA recipients in Newark and will not be replicated in the future, this Court should dismiss the Complaint on mootness and standing grounds.

Newark's causes of action for public nuisance and violation of the dormant Commerce Clause also fail as a matter of law. For its public nuisance claim, Newark principally alleges that some number of SOTA recipients found themselves in uninhabitable apartments, and on that basis, seeks to hold NYC liable for substandard housing in Newark. But, NYC neither created nor controls any substandard housing in Newark and therefore cannot be responsible for it under a public nuisance theory. *In re Lead Paint Litigation*, 191 N.J. 405 (2005). Newark also speculates, without any factual basis, that SOTA has created an increased risk of homelessness in Newark, which it asserts, also amounts to a public nuisance. Speculative, inchoate harm of the kind Newark alleges here cannot support a public nuisance claim. Indeed, it appears that over 15 months into this case, Newark has made no progress in substantiating its rank speculation; Newark's "concerns" about the "dangers" facing participants in the SOTA program apparently remain unsupported by any proof of actual harm to those participants, much less Newark itself. *See* Letter from Gary Lipshutz to Judge Wettre dated February 24, 2021, at 2 [ECF Doc. No. 104]. Nor can homelessness, indigence, or the risk thereof constitute a public nuisance. *See*

*Edwards v. California*, 314 U.S. 160, 174 (1941). Newark's second claim, under the dormant Commerce Clause, badly fails to shoehorn a straightforward government assistance program, under which NYC pays money *into* interstate commerce, into a doctrine that prohibits state regulations that *impair* interstate commerce.

Newark's Complaint should be dismissed as moot and judgment on the pleadings should be granted.

## FACTS[1]

### A.     SOTA Program

SOTA is a New York City social services program to help households with income that have fallen on hard times and become homeless move into permanent homes in communities of their choice. Compl. ¶¶ 10-12. SOTA provides one year of rental assistance, which is paid directly to the household's landlord. *Id.* ¶ 13. To be eligible for SOTA, households must have been in shelter for more than 90 days and members of the household must have enough income to afford future rental payments. *Id.* ¶ 11. Households may use SOTA for apartments in New York City or in any of the fifty states, Washington D.C., or Puerto Rico. *Id.* ¶ 12. SOTA does not currently operate in Newark. The last SOTA lease in Newark expired in December 2020 and NYC is not accepting SOTA applications for apartments in Newark at this time. Declaration of Molly Park, dated March 12, 2021 ("Park Decl.) ¶ 27.

---

[1] On NYC's motion for judgment on the pleadings under Rule 12(c), the allegations in the Complaint are subject to the standard of Rule 12(b)(6) and, accordingly, are taken as true for purposes of NYC's Rule 12(c) motion. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). On the separate branch of NYC's motion that seeks dismissal on mootness grounds, the facts set forth in the declaration of Molly Park (and exhibits) are properly before the Court. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

The SOTA program was first implemented in August 2017.  Compl. ¶ 10.  Since then, NYC has overhauled the program to enhance vetting of SOTA apartments and applications; institute a system for monthly rental payments; improve support for SOTA recipients through a dedicated hotline; and ensure that SOTA recipients understand and agree to the terms of the program.  Park Decl. ¶¶ 8-26.  Many of these enhancements were prompted by an investigation into an unscrupulous SOTA landlord in Newark, performed by the New York City Department of Investigation ("DOI").  Park Decl. ¶ 5.  The DOI's investigation and findings pre-date this lawsuit, though its report was publicly issued several days after the Complaint was filed.  *Id.*; *see also* DOI Report, available at https://on.nyc.gov/3t093D4 (last visited Mar. 11, 2021).

***Enhanced Apartment Vetting and Review***.  The SOTA program requires NYC to conduct apartment reviews of all apartments in New York City and local New Jersey counties, including Essex County.  Compl. ¶ 14.  If an apartment fails this preliminary inspection, no SOTA recipients are allowed to move in until the apartment is fixed.  *Id.* ¶ 15.  In October 2018, a little over one year into the program and in connection with the DOI investigation, NYC started revamping its apartment review procedures and created the comprehensive Apartment Review Checklist (ARC) and guidance document.  Park Decl. Ex. 1.  The ARC is a detailed safety and habitability assessment designed to prevent SOTA recipients from moving into apartments that are substandard or unsafe.  *Id.* ¶ 8.

The ARC requires a review and assessment of areas of the building where the apartment is located and of each room and hallway in the apartment.  The review encompasses security and fire safety.  Reviewers must also verify that the apartment's electrical and plumbing systems appear to be in working order.  The ARC reviewer must specifically document, among other things, any peeling or loose paint, the presence of insects or vermin, any leaks, whether

heat is available, whether the floors are free of hazards and whether there are holes in the floors, ceilings, or walls by marking these conditions as "pass" or "fail." Reviewers must certify that they have "visited the property located at the address indicated . . . and that the information in th[e] form has been answered correctly to the best of [their] ability. Park Decl. Ex. 1. The ARC was further enhanced in 2019. Park Decl. ¶ 8.

NYC also tightened its documentation requirements for landlords and brokers as a result of the DOI investigation. These efforts included requiring signed attestations regarding habitability from landlords and brokers, which if false could subject the landlord and broker to criminal penalties; and a copy of the deed to the landlord's property. Park Decl. ¶ 13; *id.* Exs. 2 and 3. In 2020, NYC further enhanced its vetting procedures to include an additional review of each SOTA application by the Department of Social Services' Office of Program Accountability ("OPA"). This review encompasses due diligence on the SOTA apartment and application more generally, to make sure the housing chosen is safe and appropriate for the SOTA household.

***Monthly Rental Payments***. In February 2020, DSS implemented an escrow system to provide landlords with rental payments on a monthly basis. Park Decl. ¶¶ 16-20. This system replaced the practice of paying landlords one year of rent up front in a lump sum. *Id.* ¶ 16; *see also* Compl. ¶ 13. The escrow system allows SOTA recipients to request that rental payments be withheld in the event that their landlord fails to maintain or fix an issue with the apartment. Park Decl. ¶¶ 17-18. As a result of this system, SOTA recipients, like any other tenant, are now able to address landlord negligence by suspending payment. *Id.* ¶ 20. In addition to the threat of code enforcement proceedings, the threat of rent withholding creates a strong incentive for landlords to maintain their apartments in a habitable condition. *Id.*

**The Hotline.**  In February 2020, DSS set up a dedicated SOTA hotline to better serve SOTA recipients and their landlords.  Park Decl. ¶¶ 21-23.  The hotline provides SOTA recipients, including those who have moved outside of New York City, with information about resources in their local communities.  *Id.* ¶ 21.  The hotline can help if a recipient is facing a loss or reduction of income and needs a referral for services, or is otherwise having issues that could affect his or her ability to remain permanently housed.  *Id.* ¶¶ 22-23.  This additional resource supports SOTA recipients as they transition from shelter to a permanent home, and eventually, as they transition out of the SOTA program.  *Id.* ¶ 22.

**Program Transparency.**  SOTA participation is voluntary; SOTA recipients select their own apartments and are responsible for taking the many steps involved in completing a SOTA application and finding housing.  *See* Park Decl. ¶¶ 24-26, Ex. 4.  To help SOTA recipients fully understand the SOTA program, NYC has developed and continually updates the SOTA Information Sheet, SOTA FAQs, and the SOTA Participant Agreement, which lay out the elements of the program, the obligations of SOTA recipients, and the services that are available to support them.  *See* Park Decl. Exs. 6 (Information Sheet), 7 (FAQs), and 4 (Participant Agreement).  DSS and shelter staff also explain the program to applicants and work with them to make sure that any apartment selected will fit in with the SOTA applicant's work and family life. Park Decl. ¶ 26.  All shelter residents are required to diligently search for permanent housing while they live in shelter.  Park Decl. ¶ 24.

These changes to the SOTA program are permanent.  Park Decl. ¶ 4.  Currently, NYC is preparing a new SOTA rule codifying many of these changes, to be issued for public comment and finalized for adoption under the city's rule-making procedures.  *Id.* ¶ 29.

**B.     Newark's Lawsuit**

Newark filed the instant lawsuit on December 2, 2019. The Complaint alleges that NYC, through the SOTA program, created a public nuisance and violated the dormant Commerce Clause and seeks to permanently enjoin the program from operating in Newark. Compl. ¶¶ 99-107 and Wherefore clause (b) (public nuisance), ¶¶ 108-19 and Wherefore clause (b) (dormant Commerce Clause). Newark's factual allegations are based on the findings of the Newark City Council, which in November 2019 enacted an amendment to its housing code to address poor housing conditions in Newark and, seemingly, in response to the SOTA program (the "Ordinance"), Compl. ¶¶ 96-98; certifications from two SOTA recipients, Ms. Sha-Kira Jones and SOTA Recipient 1, Compl. ¶¶ 25, 40; and a certification from Ms. Natasha Allen, an aide to Newark's mayor, describing conversations she had with three SOTA recipients, Ms. Julie Rodriguez, Ms. Loreal Bell, and Ms. Ranisha Howard. Compl. ¶¶ 93-95. All of the SOTA recipients named in the Complaint moved to Newark in the early days of the Program. Park Decl. ¶ 28 (Ms. Rodriguez moved to Newark in or around April 2018; Ms. Bell in or around March 2018; and Ms. Howard in or around January 2019); Certification of Ms. Sha-Kira Jones, dated November 13, 2019, ¶ 19 (Ms. Jones moved to Newark in or around March 2018); Certification of SOTA Recipient 1, dated November 14, 2019, ¶ 2 (SOTA Recipient 1 moved to Newark in or around August 2018).

*SOTA Recipients*. The Complaint alleges that that NYC was not responsive when SOTA recipients reached out with problems and that NYC told several SOTA recipients to contact local official in Newark for help, instead of NYC. Compl. ¶¶ 39, 61, 66, 94, 95. Some of the SOTA recipients also complained that, when living in NYC shelter, they felt pressure to locate apartments, leave shelter, and move into permanent homes. Compl. ¶¶ 26-27 (SOTA Recipient 1 "felt pressured to leave the shelter" by case managers there); ¶ 53 (Ms. Jones "felt

pressured [by shelter staff] to choose one of the apartments that she was shown in New Jersey");
¶ 95 (Ms. Bell "felt forced to move in because [she was told that] NYC 'had already cut the check'").

The Complaint also alleges that four of the five SOTA recipients experienced poor apartment conditions. Ms. Jones described lack of heat and electrical problems in her apartment at South 12th Street, and later, at her apartment at 1-2 Lehigh Street. Compl. ¶¶ 67-73, 97, 90. In both instances, Ms. Jones contacted Newark Code Enforcement, which performed inspections, filed complaints against the landlords, and, as a result, the landlords performed repairs or offered Ms. Jones alternative housing. *Id.* SOTA Recipient 1 also received assistance from Newark Code Enforcement when she encountered problems in her apartment, though Code Enforcement ultimately advised her to move out. *Id.* ¶¶ 37-38.

Two other SOTA recipients allegedly complained of poor housing conditions to Ms. Allen. Compl. ¶¶ 93, 95. The Complaint does not allege what course of action Ms. Allen recommended, whether these individuals contacted Newark Code Enforcement, or whether the alleged problems in their apartments were addressed. A third SOTA recipient Ms. Allen talked to, Ms. Ranisha Howard, moved to Newark shortly after NYC started its reform of the SOTA program. Park Decl. ¶ 28. Ms. Howard expressed general dissatisfaction with SOTA, but the Complaint does not allege any problems in her apartment. Compl. ¶ 94. All of the SOTA recipients named in the Complaint moved to Newark long before the program overhaul was completed and the full complement of reforms adopted. Park Decl. ¶ 28.

***The City Council***. In enacting the Ordinance, codified at Newark Muni. Code §§ 18:6-10.1 *et seq*., Newark's City Council declared that "many tenants in Newark rent substandard apartments due to the failure of landlords to maintain and upkeep their properties

after the receipt of an initial Certificate of Occupancy." Compl. ¶ 96. The Council reasoned that "many of these apartments are rented with substandard conditions that are unknown to the municipality and accepted out of desperation by tenants due to a lack of housing stock in the City of Newark." *Id.* Subsection 1 of the Ordinance sought to remedy the problem of substandard housing by requiring Newark landlords to obtain a Certificate of Code Compliance from the Newark Office of Inspections and Enforcement when an apartment changed occupancy and annually thereafter. § 18:6-10.1. Succeeding sections of the Ordinance imposed additional requirements on government agencies and private persons who provide rental subsidies and barred bringing "needy" persons into Newark. § 18:6-10.2-10.3. These sections of the Ordinance appeared designed to stop the SOTA program from operating in Newark.

## ARGUMENT

NYC moves to dismiss Newark's Complaint under Rule 12(b)(1) and Rule 12(h)(3) for lack of subject matter jurisdiction because changes in the relevant circumstances have rendered the case moot. Moreover, and in any event, this Court does not have jurisdiction to entertain Newark's request for injunctive relief because Newark does not, and cannot, demonstrate that it will experience injury from the SOTA program in the future. NYC also moves for judgment on the pleadings under Rule 12(c). For the following reasons, both branches of NYC's motion should be granted.

## I.   IN LIGHT OF NYC'S OVERHAUL OF THE SOTA PROGRAM, THIS COURT LACKS SUBJECT MATTER JURISDICTION

### A.   THE COMPLAINT SHOULD BE DISMISSED AS MOOT

Where the prevailing circumstances have rendered a case moot, the court lacks subject matter jurisdiction and must dismiss the complaint. Fed. R. Civ. P. Rule 12(h)(3); *see*

*also* Rule 12(b)(1); *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891-92 (3d Cir. 1977). A "live" issue must exist between the parties at all stages of review. *Old Bridge Owners Cooperative Corp. v. Township of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001); *see also Seneca Resources Corp. v. Township of Highland*, 863 F.3d 245, 254 (3d Cir. 2017). The question is not whether, hypothetically, the plaintiff might have claims in the future based on the new facts, but whether developments have rendered the plaintiff's actual, pending claims non-justiciable. *See Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007); *Hartnett v. Pennsylvania State Education Association*, 963 F.3d 301, 309 (3d Cir. 2020).

One way for a case to become moot is cessation of the challenged conduct. *See Hartnett*, 963 F.3d at 307; *Nextel W. Corp. v. Unity Township*, 282 F.3d 257, 262 (3d Cir. 2002); *see also Khodara Envtl., Inc. ex rel Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 193 (3d Cir. 2001) (facial challenges moot because amendment to the challenged law was "far less susceptible to attack"). While courts inquire whether the defendant made the change "unilaterally and so may 'return to [its] old ways' later on," *id.*, the cessation nonetheless moots the case "if there is no reasonable expectation that the wrong will be repeated," *Hudson v. Robinson*, 678 F.2d 462, 465 (3d Cir. 1982). In other words, "[i]f a defendant has discontinued challenged activities . . . the case is moot if there is no reasonable expectation that the wrong will be repeated." *Hudson*, 678 F.2d at 465 (citing *United States v. W. T. Grant Company*, 345 U.S. 629, 632 (1953)); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007) (holding that when "a regulation is challenged as invalid on its face, 'if an amendment removes those features . . . being challenged by the claim, any claim for injunctive relief becomes moot as to those features.'") (quoting *Nextel W. Corp.*, 282 F.3d at 262); *see also*

*N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 140 S. Ct. 1525, 1526 (2020) (change in operative

framework renders case moot).

   Here, the Complaint should be dismissed as moot because it challenges a defunct,

discontinued version of the SOTA program and SOTA does not currently operate in Newark in

any capacity.  NYC has fundamentally changed the SOTA program, thoroughly addressed the

alleged problems on which Newark bases its legal claims, and there is no reasonable likelihood

that NYC will revert to that earlier version of the program.  Moreover, there are no current

SOTA recipients in Newark, NYC is not currently accepting SOTA applications for Newark, and

any hypothetical future SOTA recipients will benefit from the changes made to the program.

Nothing remains of Newark's dispute with NYC and, accordingly, the Complaint should be

dismissed as moot.

### 1.   Material Changes to the SOTA Program Moot the Case

   The Complaint alleges four problems with the SOTA program:  *first*, annual up-

front payments to landlords that incentivize them to neglect properties; *second*, inadequate

apartment inspections; *third*, failure to respond to complaints from program participants; and

*fourth*, supposedly "coercive" tactics that NYC allegedly employed against SOTA participants. [2]

The changes to the SOTA program address each of these alleged flaws.

   The central focus of the Complaint is that "Defendants pay landlords a full one-

year's rental up front," Compl. ¶ 13, creating "perverse disincentives to landlords who stand to

gain financially by providing illegal and uninhabitable housing to residents with the expectation

of no repercussions . . . ."  *id.* ¶ 116; *see also* Compl. ¶¶ 35-38, 60-65, 89-92, 93, 95, 104, 114,

---

[2] NYC strongly denies that it used coercive tactics as alleged by Newark in utterly conclusory
fashion.

116, 119.  But, under the current version of the SOTA program, landlords are paid month-to-month and rent can be withheld if an apartment is not maintained.  *See* Park Decl. Ex. 4 (SOTA Program Participant Agreement at 1).  This eliminates any "perverse incentives" landlords may have had to forego maintenance and repairs; if they do, SOTA tenants will withhold rent just as any other tenant would.

This change also fully addresses the concern, expressed by at least one SOTA recipient, that her landlord "didn't care about her or her living conditions *because the landlord was already paid*."  *Id.* ¶ 91 (emphasis added).  Now that the SOTA program pays rent on a monthly basis and rent can be withheld, landlords face the exact same potential loss of rent for neglecting SOTA tenants that they do for tenants who do not receive SOTA.

Substantial changes to the apartment review process also moot Newark's allegations of insufficient apartment inspections and due diligence.  The Complaint asserts that "[t]he SOTA Program . . . requires [NYC] or provider-staff or case managers, to conduct walk-throughs of all apartments . . . ," Compl. ¶ 14, but Defendants "failed to inspect, or failed to adequately inspect, the apartments . . . ," *id.* ¶ 16.  It further alleges that "Defendants failed to provide a system to adequately hold participating landlords and real estate brokers accountable for illegal and/or uninhabitable housing."  *Id.* ¶ 17.

None of these assertions hold true today.  In 2018, NYC implemented the ARC, a comprehensive apartment review protocol, which was further enhanced it in 2019.  Park Decl. Ex. 1.  NYC has also enhanced the SOTA program's accountability requirements for landlords and brokers and improved its due diligence procedures.  For example, under the current SOTA landlord agreement, landlords must certify that they will comply with all applicable building and housing codes and maintain the apartment throughout the SOTA tenancy.  Park Decl ¶ 13, Ex. 2.

Failing to live up to these requirements could subject the landlord to criminal penalties. *Id.* at

¶ 13.  Most recently, in 2020, NYC added an additional layer of due diligence review by the

OPA.  The Complaint includes only one report by one tenant of poor apartment conditions after

the initial adoption of the ARC in 2018, Compl. ¶ 87, and no reports of problems under the

current application and apartment review system.

Newark's allegation that NYC does not respond to SOTA recipient complaints is

fully addressed and mooted by NYC's 2020 implementation of a dedicated hotline for SOTA

recipients who want or need help during or after their tenancies.  NYC advises SOTA recipients

that they should contact the hotline if they are experiencing problems with their housing; are

being evicted; are facing a loss or reduction of income and need a referral for job training or

career services; or are otherwise having issues that may affect their ability to remain in

permanent housing.  Park Decl. ¶ 23.  This initiative constitutes yet another building block of a

program that is fundamentally different than the one described in Newark's Complaint.

Finally, Newark's assertion that SOTA is coercive is baseless—and moot.  The

Complaint alleges that "several SOTA recipients were unlawfully coerced to move to Newark by

the Defendants . . . ."  Compl. ¶¶ 22, 104.  But, none of the accounts of individual SOTA

recipients describes coercive or otherwise actionable conduct.  Families and individuals in

shelter are expected to consistently, diligently, and actively search for and locate permanent

homes.  Park. Decl. ¶ 24.  In any event, today it is undisputable that SOTA recipients select their

own apartments and are fully apprised of their obligations under the program, the benefits they

will receive, and the services that are available to them.  Park Decl ¶ 25; *id.* Ex. 4.

### 2. There Is No Reasonable Likelihood that NYC Will Revert to the Original Version of the SOTA Program

There is no realistic prospect that NYC will revert to the original version of SOTA.  NYC has no desire to reverse all the positive changes it has made to the program.  To the contrary, NYC is currently codifying many of these changes into a NYC rule.  Park Decl. ¶ 29.  Moreover, the overhaul of SOTA was originally initiated in response to a DOI investigation.  Indeed, many of the specific changes NYC implemented over the last few years are described or previewed in the DOI report, including the development of the ARC, the change from annual to monthly rent, improvements to the Landlord Agreement, and enhancements to the documentation requirements from brokers and landlords.  DOI Report at 11-15, available at https://on.nyc.gov/3t093D4 (last visited Mar. 11, 2021).  Given DOI's role as an external check on NYC's implementation of the program, it cannot be said that NYC undertook these changes unilaterally and could reverse them freely.  *Hudson*, 678 F.2d at 465.

NYC has fundamentally changed the SOTA program and there is no "reasonable likelihood" that the conduct complained of by Newark will recur.  Accordingly, the Complaint should be dismissed as moot.

### B. BECAUSE NEWARK DOES NOT DEMONSTRATE THAT IT WILL EXPERIENCE INJURY FROM THE SOTA PROGRAM, ITS REQUEST FOR INJUNCTIVE RELIEF IS NOT JUSTICIABLE

This Court further lacks subject matter jurisdiction to enjoin the SOTA program because Newark does not and cannot allege any realistic prospect of future harm from the program as it exists today.  A plaintiff demonstrates standing to seek prospective injunctive relief only where the plaintiff alleges a likelihood of future harm to itself.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen of Los

Angeles….”), *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*,
218 F.3d 232, 240 (3d Cir. 2000) (same for declaratory judgments).  Past injury is not adequate
to support prospective equitable relief.  *Lyons*, 461 U.S. at 102.  Nor is speculative future injury.
*See, e.g., McNair v. Synapse Group, Inc*., 672 F.3d 213, 225-26 (3d Cir. 2012) (no "reasonable
likelihood of future injury"); *Smith v. Chrysler Fin. Co*., 2004 U.S. Dist. LEXIS 28504, at *10-
11 (D.N.J. Dec. 30, 2004) (allegation of only speculative injury insufficient to confer standing);
*City of Newark v. City of New York*, Index No. 19-20931, Letter Order Dismissing NYC's
Counterclaim against Newark at 4 [ECF Doc. No. 64].

   Here, Newark seeks to enjoin the SOTA program going forward, but all of its
factual allegations concern a version of the program that is long past, and utterly defunct.  *See
supra.*  The Court cannot enjoin the implementation of a non-existent program.  Moreover, there
are no current SOTA recipients in Newark and any potential future SOTA recipient will benefit
from all of the new safeguards NYC has put in place.  The Complaint alleges no basis at all to
enjoin the SOTA program as it exists today and, therefore, Newark's claims should be dismissed
because Newark cannot satisfy the requirements for obtaining injunctive relief in federal court.

## II. JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED AGAINST NEWARK

### A. NEWARK'S PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED

   Newark does not advance any cognizable cause of action for public nuisance
against NYC.  Read generously, Newark's Complaint asserts three putative grounds for its
nuisance claim: first that SOTA is responsible for substandard housing in Newark; second that
SOTA might possibly lead to increased homelessness in Newark; and third that SOTA, a social
service program that offers a year of rental assistance to formerly homeless households, is by its

nature a public nuisance.  Compl. ¶¶ 113-19.  None of these assertions comes close to stating a claim for public nuisance.

A public nuisance is an unreasonable interference with a right common to the general public.  *In re Lead Paint Litigation*, 191 N.J. 405, 425 (2005) (quoting *Restatement (Second) of Torts* § 821B(1)).  "[B]y definition," a public nuisance "is related to conduct, performed in a location within the actor's control, which has an adverse effect on a common right."  *Lead Paint Litigation*, 191 N.J. at 429.  "A person is not civilly liable for a nuisance caused or promoted by others over whom he has no control and such person is not bound."  *N.J. Department of Environmental Protection v. Exxon Corp.*, 151 N.J. Super. 464, 483 (Ch. Div. 1977); *see also Camden County Board of Chosen Freeholders v. Beretta*, 273 F.3d 536, 539 (3d Cir. 2001) (citing *Exxon*, 151 N.J. Super. at 483-84) ("For the interference to be actionable, the defendant must exert a certain degree of control over its source.").  A public nuisance claim asserted against a defendant that lacks control over the source of the alleged interference does not lie, because while the defendant "can bring its own conduct or activities at a particular physical site under control," the defendant has only a "limited ability . . . to exercise control beyond its sphere of immediate activity . . . ."  *Beretta*, 273 F.3d at 541.[3]

## 1.  NYC Does Not Control Newark's Dilapidated, Substandard Housing

Newark asserts that NYC, through SOTA, is somehow responsible for substandard housing in Newark, Compl. ¶¶ 114, 116, yet makes no pretense of alleging that

---

[3] Thus, particularly where the requested relief is injunctive, it must be the case that the defendant can abate the nuisance.  *See Lead Paint Litigation*, 191 N.J. at 428-29.  It is incumbent on courts to require that the plaintiff make a clear showing that the defendant controls the source of the nuisance, and therefore can abate it, in recognition of the "essential" fact that the public nuisance tort "has historically been linked to the use of land by the one creating the nuisance."  *Id*. at 423; *see also Cioletti v. Continental Airlines, Inc*., 2011 U.S. Dist. LEXIS 81135, at *10 (D.N.J. July 25, 2011).

NYC created any substandard conditions or controls any substandard housing. Newark's theory of public nuisance thus suffers from the same fatal defect as the nuisance claim asserted in *Lead Paint Litigation*. There, the alleged nuisance was the ingestion hazard caused by the flaking and peeling of lead paint, for which the plaintiffs sought to hold the paint manufacturers liable. The court found that "the conduct that has given rise to the public health crisis is, in point of fact, poor maintenance of premises where lead paint may be found . . . ." *Lead Paint Litigation*, 191 N.J. at 433. By "ignor[ing] the fact that the conduct that created the health crisis [wa]s the conduct of the premises owner," the plaintiffs sought to "separate conduct and location and thus eliminate entirely the concept of control of the nuisance," making their claim untenable. *Id.*

Similarly here, Newark seeks to hold NYC liable for conditions that might exist inside certain privately-owned apartments in Newark even though these private, Newark, New Jersey apartments are completely outside NYC's control. Indeed, it is the owners of these properties, not NYC, that are responsible for maintaining them and ensuring they are habitable and up-to-code. The Newark Municipal Code, §§ 18:3-1.1 *et seq.*, specifically requires Newark property owners, not NYC, to shoulder this responsibility. In adopting the Ordinance, Newark conceded that the substandard condition of many apartments in Newark is "due to the failure of landlords to maintain and upkeep their properties . . . ." Newark Muni. Code § 18:6-10 (whereas clauses). The existing state and condition of Newark's housing stock was not caused by NYC and NYC does not exert any control over Newark's housing stock whatsoever. Accordingly, the reasoning set forth in *Lead Paint Litigation* forecloses Newark's theory of liability against NYC.

Newark's effort to hold NYC responsible for the behavior of "unscrupulous" Newark landlords is equally doomed. Newark alleges that NYC, through SOTA, created "disincentives" to landlords who "stand to gain financially by providing illegal and uninhabitable

housing." Compl. ¶ 116.  But, NYC cannot be held responsible for the misconduct of third

parties.  *Beretta*, 273 F.3d at 541.  In *Berretta*, the Third Circuit explicitly rejected the misguided

notion that a defendant could be culpable for a public nuisance, when the nuisance was in fact

caused and created by the wrongful actions of independent third parties.  *Id*.  The same principle

applies here.  If, as Newark alleges, Newark landlords neglected their properties, allowing them

to fall into disrepair, the landlords, not NYC, are responsible

### 2. Homelessness Is Not a Public Nuisance

Newark alleges in a conclusory way that through SOTA, NYC increased the risk

of homelessness in Newark, thereby creating a public nuisance.  Compl. ¶¶ 115, 119.  But

Newark's Complaint sets forth no factual allegations supporting a plausible theory that SOTA

has contributed to homelessness in Newark.  Speculative and unsupported claims of this type

cannot survive a motion for judgment on the pleadings.  *Bangura v. City of Phila.*, 338 F. App'x

261, 264 (3d Cir. July 29, 2009).  Rather, a plaintiff asserting a nuisance claim must allege that

harm or damage has already happened or is currently happening.  *See, e.g.*, *Township of W.

Orange v. Whitman*, 8 F.Supp.2d 408, 433 (D.N.J. 1998).  Far from promoting homelessness,

SOTA is specifically designed to mitigate the risk thereof.  Only households with a recurrent,

consistent source of income adequate to pay future rent are eligible to move out of shelter with

SOTA, Compl. ¶ 11.

Moreover, Newark's allegations boil down to the unfortunate and frankly

offensive assertion that homelessness is a public nuisance—and that NYC is promoting more of

it.  Homelessness is a great hardship for the individuals and families who experience it and a

difficult public policy problem without geographic limits.  But, it is not a "nuisance" in the

common law sense of that term, nor any other, and no New Jersey precedents support Newark's

18

position that it is.  To the contrary, in New Jersey, there is "no justification in law declaring that

people [in danger of becoming homeless], by their nature, are a nuisance."  *City of Elizabeth v.*

*City of New York, et. al.*, New Jersey Superior Court, Law Division, Docket No. UNN-L-0147-

20, Order dated May 29, 2020 at 7 [ECF Doc. No. 72-10] ("City of Elizabeth v. NYC").[4]

Indeed, local efforts to restrict disadvantaged persons and families, including the homeless and

low income, from moving into the community on nuisance and other similar grounds have been

slapped down by courts across the country.  *See, e.g.*, *Whitman*, 8 F. Supp. 2d at 433 (holding

that planned group home to be operated in accordance with New Jersey law could not be

considered a private nuisance); *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972)

(holding vagrancy law aimed at keeping out homeless persons unconstitutionally vague);

*Edwards v. California*, 314 U.S. 160, 174 (1941) (invalidating law seeking to bar indigents);

*Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) (ordinances banning sleeping and camping

on public property violate the constitutional rights of homeless people).

### 3.  SOTA Is Not a Public Nuisance

SOTA grants themselves also do not constitute a nuisance.  Newark appears to

allege that SOTA is a public nuisance because it provides one year of rental assistance, instead of

perpetual or longer terms of rental assistance.  Compl. ¶ 113.  But, government assistance used

by homeless households to remove themselves from shelters and live instead in permanent

housing does not "interfere[]" with any public right.  Restatement (Second) of Torts § 821B(1).

Much less is it "unreasonable" for NYC to provide this assistance.  *Id*.  Newark's apparent belief

that a local government can be liable to a third party for public nuisance by the mere act of

---

[4] An expansion of state law should be rejected where, as here, there is no reason to believe it
would be adopted by the courts of the state.  *See Beretta*, 273 F.3d at 541 ("It is not the role of a
federal court to expand or narrow state law in ways not foreshadowed by state precedent.").

providing a benefit to low-income families has no basis in law.  Indeed, the notion that the

payment of rent on behalf of another might constitute or contribute to a nuisance verges on the

absurd.  Carried to its logical conclusion, this would mean that a tenant's mother could be held

liable for nuisance as a result of footing her child's rent if that child later became homeless or if

the child's apartment suffered from code violations.  That is not the law.

Newark's Complaint does not state a claim for public nuisance against NYC.

Accordingly, NYC should be granted judgment on the pleadings on Count I of the Complaint.

### B.  NEWARK FAILS TO PLAUSIBLY ALLEGE THAT THE SOTA PROGRAM VIOLATES THE DORMANT COMMERCE CLAUSE

Newark's suggestion that a policy meant to assist low-income individuals

amounts to a dormant Commerce Clause violation is based on a total misunderstanding of the

law and is, therefore, facially defective.  The dormant Commerce Clause prohibits states and

localities from engaging in "economic protectionism" by "regulat[ing] or otherwise burden[ing]

the flow of interstate commerce."  *McBurney v. Young*, 569 U.S. 221, 235 (2013).  It "responds

principally to state taxes and regulatory measures impeding free private trade in the national

marketplace," *Reeves, Inc. v. Stake*, 447 U.S. 429, 437 (1980), by prohibiting "discriminating

between transactions on the basis of some interstate element," *Comptroller of the Treasury v.

Wynne*, 135 S. Ct. 1787, 1794 (2015).  *See also Philadelphia v. New Jersey*, 437 U.S. 617, 626-

27 (1978) (dormant Commerce Clause violation where regulation "discriminat[es] against

articles of commerce coming from outside the State").

Newark's Complaint makes no effort to explain how SOTA grants—which enable

certain eligible individuals to *move to* and *contribute to* Newark's economy—regulate interstate

commerce or amount to "economic protectionism."  *See West Lynn Creamery, Inc. v. Healy*, 512

U.S. 186, 192 (1994).  The Complaint alleges in a conclusory way that SOTA "unlawfully and

differentially burdens" Newark, Compl. ¶ 101, but identifies no ways in which SOTA impedes the flow of interstate commerce, burdens private trade in the Newark marketplace, or discriminates between transactions on the basis of some interstate component.  Newark's perplexing suggestion that NYC's "walkthrough inspections" violate the dormant Commerce Clause is frivolous.  *Id.* ¶¶ 102-03.  Indeed, nothing about SOTA implicates the dormant Commerce Clause, much less violates it.  Accordingly, this Court should grant NYC's motion for judgment on the pleadings as to Count II of the Complaint.[5]

---

[5] Newark has cited to the State motion court's decision in *City of Elizabeth v. NYC* [ECF Doc. No. 72-10], but that decision is not controlling.  *See Houbigant, Inc. v. Fed Ins. Co.*, 374 F.3d 192, 199 n.9 (3d Cir. 2004); *United States v. Bedford*, 519 F.2d 650, 653 n.3 (3d Cir. 1975).  It is also not persuasive, for multiple reasons.  First, the decision was rendered under the generous pleadings standards of New Jersey Rule 4:6-2e, which do not apply here.  Second, the State court's summary discussion of public nuisance did not grapple with *Lead Paint Litigation*, the New Jersey Supreme Court's controlling case on public nuisance liability for the acts of third parties, which is fatal to Newark's public nuisance claim.  And third, the State court misread and mischaracterized dormant Commerce Clause jurisprudence as "vague[]" and "not fully developed," *City of Elizabeth v. NYC* at 8-9, when in fact, the long line of dormant Commerce Clause discussed above make clear that SOTA does not violate the dormant Commerce Clause.

## CONCLUSION

For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction and motion for judgment on the pleadings should be granted, and Newark's Complaint should be dismissed.

Dated:     March 12, 2021

Respectfully submitted,

JAMES E. JOHNSON
Corporation Counsel of the City of New York

By:     */s/ Brian T. Horan*
        Brian T. Horan
        Doris F. Bernhardt*
        New York City Law Department
        100 Church Street
        New York, NY 10007
        212.356.2297/2296
        bhoran@law.nyc.gov
        dbernhar@law.nyc.gov
        *Appearing *pro hac vice*

*Attorneys for Defendants*