

THE CITY OF NEW YORK
## LAW DEPARTMENT

**JAMES E. JOHNSON**
*Corporation Counsel*

100 CHURCH STREET
NEW YORK, NEW YORK 10007

**BRIAN T. HORAN**
*Senior Counsel*
Affirmative Litigation Division
212.356.2297
bhoran@law.nyc.gov

April 26, 2021

**Via ECF**

Hon. Madeline Cox Arleo, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

> Re:   *City of Newark et al. v. City of New York et al.*
>        Case No. 19-cv-20931-MCA-LDW

**REPLY IN FURTHER SUPPORT OF NYC'S MOTION TO DISMISS NEWARK'S
COMPLAINT AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Dear Judge Arleo:

        Defendants the City of New York, Mayor Bill de Blasio, and Commissioner
Steven Banks (collectively, "NYC") respectfully submit this letter brief in further support of
NYC's motion to dismiss the Complaint of the City of Newark ("Newark") and motion for
judgment on the pleadings.  Newark's Complaint should be dismissed because it is moot and
does not state a claim for public nuisance or a violation of the dormant Commerce Clause.

## I.   THIS COURT LACKS SUBJECT MATTER JURSIDICTION IN LIGHT OF THE SUBSTANTIAL OVERHAUL OF THE SOTA PROGRAM

### A.  Material changes to the SOTA program moot Newark's Complaint.

        Newark's lawsuit became moot when the City of New York implemented changes
to SOTA that eliminated the features of the program Newark challenged and the last SOTA
leases in the city expired.  Since the filing of Newark's lawsuit, NYC has substantially
overhauled the SOTA program.  As NYC's moving brief lays out in detail, the current SOTA

program differs from the older version in several fundamental respects: SOTA now includes enhanced apartment vetting and review, monthly rental payments, a program hotline, improved program documents, and increased program transparency and accountability.  NYC MOL, ECF Doc. No 111, at 4-6.  Moreover, Newark alleges no legitimate basis for any assertion that SOTA is coercive.  *Id*. at 6, 13.  These improvements, now being codified in an NYC rule, have materially altered the program's design and internal review process, and have removed the precise features of the SOTA program that Newark's Complaint challenged.

Indeed, these very program changes led a putative class of former SOTA tenants to voluntarily dismiss a lawsuit alleging problems in the early implementation of SOTA.  The tenants explained that "significant changes" to the SOTA program and codification of those changes in a rule remedy the concerns of former tenants and "protect[] future SOTA participants from the harms" some participants previously experienced.  Tenants-Intervenors' Status Ltr., ECF Doc. No. 126, at 1-2.  Meanwhile, a putative class of future tenants is suing Newark to safeguard the SOTA program going forward and to prevent Newark from blocking it.  Tenants-Intervenors' Compl., ECF Doc. No. 87, ¶¶ 64-74, 85-87, 90-114.

In its Opposition, Newark argues that the changes to SOTA are irrelevant as a matter of law because SOTA recipients may have been harmed by the original, now-defunct version of SOTA.  Newark also speculates the new version of SOTA may cause harm in the future and contends that the voluntary cessation doctrine bars a finding of mootness.  Newark Opp., ECF Doc. No. 115, at 2-4.  None of these arguments is persuasive.

Although Newark maintains that its claims remain live because former SOTA recipients may have been "negative[ly] impact[ed]" by the program and cites the statewide eviction moratorium, imposed during the COVID-19 pandemic, as a reason we do not know the "true . . . impact" of the SOTA program, Newark Opp. at 4, these assertions offer no basis to allow Newark's claims to proceed.  Enjoining the current, fundamentally different version of the program would not remedy the harm allegedly caused by the old version of SOTA.  *See* NYC MOL at 14-15.  A lawsuit to enjoin a program that no longer exists is by definition moot.

Newark's insistence that the harm of the original SOTA program can only be ascertained after the COVID-19 pandemic ends, Newark Opp. at 3-4, only highlights the mootness of its claims.  Most significantly, Newark's assertion emphasizes that Newark is not currently suffering any identifiable harm from the SOTA program.  *See Id.* at 3.  This tacit admission renders Newark's lawsuit for prospective injunctive relief moot and non-justiciable.  Moreover, Newark's reliance on the circumstances of the COVID-19 pandemic underscores its failure to assert that substandard apartment conditions remain an ongoing threat to SOTA tenants following the program changes implemented by NYC.  Newark does not argue that the pandemic somehow masks these conditions, and such an argument would be implausible.

Additionally, Newark's position reveals how completely the circumstances have changed since the inception of the SOTA program in August 2017 and the filing of this lawsuit in December 2019.  As a result of the COVID-19 pandemic, many have lost their lives and livelihoods in Newark and across the country; evictions have halted; and the federal government has enacted a stimulus bill with hundreds of millions of dollars for tenants facing eviction and

housing instability.[1] Newark's unsupported speculation that it will suffer harm from SOTA after the pandemic doesn't take any of these radically changed conditions into consideration—and merely serves to emphasize why Newark's lawsuit is moot in this utterly transformed landscape.

Newark's claims are not rendered justiciable by its assertion that the new version of SOTA may cause harm in the future. *See* Newark Opp. at 4-5. Newark's substantive concerns about the program have been addressed through program changes, leaving Newark no basis to believe that SOTA is likely to cause any injury in the city. Newark's further assertion that it is entitled to discovery as to whether NYC's changes to the program are sufficient also fails because discovery cannot be used to fish for evidence to support speculative and hypothetical claims. *See, e.g.*, *Onyx Ins. Co. v. N.J. Dep't of Banking & Ins.*, 704 Fed. Appx. 110, 2017 U.S. App. LEXIS 14560, 2017 U.S. App. LEXIS 14560 *6 (3d Cir. Aug. 8, 2017).[2]

Newark's contention that its moot claim is somehow saved by the alleged connection between SOTA and the Advantage program, Newark Opp. at 3, is unavailing. As Newark concedes, Advantage was an entirely different program from SOTA, with different eligibility criteria. *See Newark* Compl. ¶¶ 11, 19. Moreover, Advantage was discontinued after New York State pulled its funding during a budget crisis, not because it was unsuccessful. *See Zheng v. City of New York*, 19 N.Y.3d 556, 562, 576 (2012). The only similarity between Advantage and SOTA that has any bearing on this case is that the tenants who benefited from Advantage sought to have that program continued, *see id.*, just as the putative class of tenants seeks to preserve SOTA for future tenants.

Finally, contrary to Newark's suggestion, Newark Opp. at 2, the voluntary cessation doctrine does not bar a finding of mootness where, as here, the challenged activity has stopped and there is no reasonable expectation that the challenged actions will recur. *See. Hudson v. Robinson*, 678 F.2d 462, 465 (3d Cir. 1982). NYC began implementing changes to the SOTA program well before the start of the litigation, as reflected in the DOI Report, *see* ECF Doc. No. 8-1at 10-15; formalized these changes through new guidance and agreement documents; and is codifying them through formal rulemaking under the City Administrative Procedure Act. *See* Park Decl., ECF Doc. No. 111-1, ¶ 29. These official acts amending the SOTA program were done in good faith with the intent of making these changes permanent. *See Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 861-62 (3d Cir. 2012). The voluntary cessation exception to mootness does not apply.

**B. This Court's decision in the Jersey City should not control in light of the material differences in Jersey City's and Newark's Complaints.**

Material differences in Jersey City's and Newark's Complaints warrant dismissing Newark's case as non-justiciable, notwithstanding this Court's decision that Jersey

---

[1] *See* H.R.1319 - American Rescue Plan Act of 2021,117th Congress (2021-2022) *available at* https://www.congress.gov/bill/117th-congress/house-bill/1319 (last visited April 26, 2021).

[2] Newark's assertion that NYC intended to make SOTA recipients "another state's problem[]," Newark Opp. at 6, 9, is baseless, offensive, and belied by NYC's consistent improvements to the program and the fact that NYC has the largest share of SOTA recipients of any jurisdiction.

City's case could proceed.  *See* Order on NYC's Motion to Dismiss Complaint of Jersey City ("JC Order"), ECF Doc. No. 114.  Whereas Jersey City sought an injunction against the SOTA program *until it obtains the names and addresses of SOTA recipients*, Jersey City Compl. ECF Doc. No. 61, *ad damnum* clause ¶¶ (a)-(b), Newark seeks to permanently enjoin implementation of the SOTA program in Newark, Newark Compl., ECF Doc. No. 1, *ad damnum* clause ¶¶ (a)-(b).  The "live" dispute that the Court found with respect to Jersey City—that Jersey City "does not know the identities and addresses of its aggrieved residents or the landlords involved," JC Order at 4—is not present in Newark's case, because Newark received a full list of names and addresses of current SOTA participants in December 2019.  Moreover, and in any event, Newark—in contrast to Jersey City—asks this Court for relief that, as discussed above, is not available: a sweeping injunction that would enjoin implementation of a program that is defunct and not currently operating in Newark.

        In addition, Newark's and Jersey City's Complaints diverge in their theory of public nuisance.  Concluding that Jersey City's case is not moot, this Court determined that its Complaint focused on "poor administration" of the SOTA program.  JC Order at 4.  By contrast, Newark's Complaint alleged that unscrupulous landlords provided substandard accommodations without repercussion.  *Compare* Jersey City Compl. ¶ 59 (describing public nuisance as "administ[ration] [of] the SOTA program without sufficient oversight or proper paperwork . . .") *with* Newark Compl. ¶ 119 (describing public nuisance as "coercive conduct used to force citizens into poorly-vetted, illegal and uninhabitable housing, and the perverse disincentives stemming from the SOTA program . . .").  The specific features of the SOTA program that Newark identifies as contributing to the public nuisance have been removed—and Newark does not argue otherwise.  *See* Newark Opp. at 3 (describing NYC's "remedial efforts").  Accordingly, this Court's decision concluding that Jersey City's Complaint is not moot should not control here, and the Court should dismiss Newark's Complaint.

## II.    THIS COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS

### A.  Newark's public nuisance claim should be dismissed.

        As set forth in NYC's moving papers, Newark's public nuisance claim fails as a matter of law.  NYC MOL at 15-20.  Furthermore, to the extent Newark's theory of public nuisance is based on the "operational sufficiency" of SOTA, Newark Opp. at 4, Newark fails to identify how the efficiency or administration of a government program can be the basis for a public nuisance cause of action.  Indeed, allowing Newark's public nuisance claim to continue on this basis would mark a significant expansion of the nuisance doctrine, which is founded upon the wrongful use of or intrusion into real property.  *See, e.g.*, *In re Lead Paint Litigatio*n, 191 N.J. 405, 423-24 (2005); *Enriquez v. Johnson & Johnson*, 2019 N.J. Super. Unpub. LEXIS 2131, at *25-27 (Sup. Ct., Oct. 10, 2019).

### B.  If the public nuisance claim is not dismissed in its entirety, NYC's motion should be granted to the extent of dismissing Newark's requests for monetary relief.

        If Newark's public nuisance claim is not dismissed entirely, NYC's motion should be granted in part with respect to Newark's requests for monetary relief and specific performance.  In particular, in its *ad damnum* clause, Newark seeks a "constructive trust for the

benefit of all participants in the SOTA program that wish to remain in Newark" (paragraph (d)) and "specific performance requiring Defendants to facilitate the relocation" of SOTA participants to New York City (paragraph (e)). Because such relief is unavailable as a matter of law—even if Newark prevails on its public nuisance claim—these demands should be stricken. *See Chapolini v. Capodanno*, No. 18-2629, 2019 U.S. Dist. LEXIS 151700, at \*58 (E.D. Pa. Sep. 5, 2019) (striking particular request for relief on motion to dismiss); *Hector v. Blue Cross*, No. 16-0293, 2016 U.S. Dist. LEXIS 127020, at \*15 (M.D. Pa. Sep. 19, 2016) (same).

Newark cannot be granted a constructive trust. To justify this remedy, Newark would need to show wrongful conduct leading to a "transfer or diversion of property that unjustly enriches" NYC. *Flanigan v. Munson*, 175 N.J. 597, 608 (2003) (citing *D'Ippolito v. Castoro*, 51 N.J. 584, 588-89 (1968)). The SOTA program does not involve the transfer or diversion of property except *from* NYC *for the benefit of* SOTA recipients and, consequently, does not result in NYC's unjust enrichment. This could not be further from paradigmatic constructive trust cases involving fraud and undue influence over others' financial decisions leading to windfalls for wrongdoers. *See D'Ippolito*, 51 N.J. at 589.

Likewise, Newark's demand for "specific performance" in connection with the return of SOTA recipients to NYC is not cognizable. Specific performance is a remedy for breach of contract. *Bressman v. J&J Specialized, LLC*, No. A-5550-11T1, 2013 N.J. Super. Unpub. LEXIS 2890, \*14-15 (App. Div. Dec. 6, 2013). It is entirely inapposite where, as here, there is no contract at issue. *See Hardy v. Hangen*, 134 N.J. Eq. 176, 177 (Ch. Ct. 1943); *Van Name v. Fed. Deposit Ins. Corp.*, 130 N.J. Eq. 433 (Ch. Ct. 1941). Accordingly, the Superior Court dismissed Union County's claim against NYC for specific performance in connection with the SOTA program. *City of Elizabeth v. City of New York, et al.*, N.J. Superior Court, No. 147-20 (Law Div. May 29, 2020), ECF Doc. No 72-10, at 11. This Court should likewise dispose of Newark's request for specific performance as a remedy.

**C. Newark's dormant Commerce Clause claim should be dismissed.**

Newark does not state a dormant Commerce Clause violation for the same reason Jersey City failed to do so. *See* JC Order at 6-7. In its Opposition, Newark contends that the SOTA grant amounts to a dormant Commerce Clause violation because of "the *increased* burden that *the SOTA program* places on Newark." Newark Opp. at 8. But, the "burden" of providing governmental services is not cognizable under the dormant Commerce Clause, which analyzes only the impact on the flow of *interstate* commerce. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127-28 (1978); *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970) (a law will be upheld "unless the burden imposed on such [interstate] commerce is clearly excessive . . ."). As this Court has already held with respect to Jersey City's materially indistinguishable dormant Commerce Clause claim, providing "social services within a state . . . is not an undue burden on interstate commerce." JC Order at 6. Thus, Newark, like Jersey City, has not "articulate[d] the precise undue burden placed on interstate commerce." JC Order at 6.[3] Its dormant Commerce Clause claim should be dismissed.

---

[3] Newark grounds its dormant Commerce Clause analysis in a misreading of *Edwards v. California*, 314 U.S. 160 (1941). Newark Opp. at 9. In striking down a California law that

5

* * *

Over the course of this litigation, NYC has overhauled the SOTA program; tenants—the parties most affected by the program—have sought to preserve it in Newark; and Newark still has not identified any costs it has been forced to shoulder.  Newark is left challenging a prior iteration of the SOTA program, with tenants opposing their efforts, and without any injury to show.  NYC's motion to dismiss for lack of subject matter jurisdiction and motion for judgment on the pleadings should be granted, and Newark's Complaint should be dismissed.

Respectfully submitted,

JAMES E. JOHNSON
Corporation Counsel of the City of New York

By:   */s/ Brian T. Horan*
          Brian T. Horan

*Attorney for Defendants*

---

prohibited bringing an "indigent" person into the state, the Court's central concern was California's effort to "gain a momentary respite" from the Great Depression "by shutting its gates" to people from other states.  *Id.* at 173-174.  The Court was hostile to state-imposed constraints on movement, not to social services programs that may be used in more than one jurisdiction.